620 A.2d 880

TALBOT COUNTY, Maryland

v.

Wilburt SKIPPER et al.

No. 164 Sept. Term, 1990.

Court of Appeals of Maryland.

March 10, 1993.

James M. Slay, Jr. (Suzanne L. Hood, Henry & Price, all on brief), Easton, for petitioner.

M. Albert Figinski and Michael P. Smith (Weinberg and Green, Baltimore, Walter M. Baker, Elkton, all on brief), for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ELDRIDGE, Judge.

We shall hold in this case that Maryland Code (1982, 1987 Repl.Vol., 1992 Cum.Supp.), Title 9, Subtitle 2, Part III, of the Environment Article (entitled "Sewage Sludge"), preempts a Talbot County ordinance which requires a land owner to record certain information in the county land

records before applying sewage sludge to his land in accordance with a state permit.

The State of Maryland has regulated the utilization of sewage sludge for many years.[1] Section 9–231 of the Environment Article of the Maryland Code requires a person to have a "sewage sludge utilization permit" before the person may utilize sewage sludge in this State. The Maryland Department of the Environment has promulgated regulations governing sewage sludge utilization as required by § 9–230. If an application for a state permit to utilize sewage sludge meets the requirements of the Code and these regulations, the Department issues a permit which "authorizes the permit holder to utilize sewage sludge according to the terms of the permit." § 9–237.

The Talbot County government has also been concerned about the utilization of sewage sludge. In 1988, the County Council of Talbot County amended § 19–8 of the Talbot County Code, adding the following subsection:

"(j) *Sewage Sludge Utilization*

(i) Recordation required for application of sludge. Within thirty (30) days of each land application of sewage sludge upon any Property in the County, the land owner shall cause to be recorded in the Talbot County land records a document that abstracts the State permit application. The abstract shall identify the filing office for the full application and shall include the following information: legal owner of farm where sludge is to be applied, liber and folio of deed recordation of said farm, and date land application was begun under the referenced state permit. The County Planning Office shall furnish a recommended form.

---

1. *See* Ch. 680 of the Acts of 1974, Code (1982) § 9–210.1(b) of the Health–Environmental Article. This section was repealed by ch. 748 and ch. 779 of the Acts of 1984, which set forth a new scheme of sewage sludge regulation. This new scheme was reorganized by ch. 306 and ch. 612 of the Acts of 1987, Code (1982, 1987 Repl.Vol.) Title 9, Subtitle 2, Part III of the Environment Article.

(ii) Critical Area Utilization. Sewage sludge shall not be utilized in the Critical Area unless the applicant has first demonstrated to the County Planning Officer that there will be a net improvement in the water quality to the adjacent body of water, in accordance with Section 14.15.02(F) of the Chesapeake Bay Critical Area Criteria.

(iii) Buffer required from residences and wells. There shall be no utilization of sewage sludge within five hundred (500) feet of a residence or well without written permission from the owner of such residence or well.

(iv) Separability. Should any subsection, provision or part of this section be declared by the courts to be unconstitutional or invalid, such decision shall not affect the validity of any subsection, provision or part other than that declared to be unconstitutional or invalid."

The County Council amended subsection (j)(i) approximately six months later, changing the recordation requirement so that recordation was required only before the first sludge application, but requiring more information to be included in the filing. The new subsection provides:

"(j) *Sewage Sludge Utilization*

(i) Recordation Required for Application of Sludge. Within thirty (30) days of the initial land application of sewage sludge under a state permit application upon any property in the County, the land owner shall cause to be recorded in the Talbot County land records a document that gives the following information: the legal owner of the land on which sludge is applied, the liber and folio of deed recordation for title to said land, the date the land application was first made under the referenced state permit, the number of the referenced state permit, the number of the state permit, the location of the subject lot or parcel of land and the location in Talbot County where the full application for the state permit and the permit itself may be examined. The County Planning Office shall furnish a recommended form for this purpose."

Three Talbot County farmers individually contracted with Bio–Gro Systems, Inc., to apply sewage sludge to their land. Bio–Gro obtained for each farmer a sewage sludge utilization permit from the State of Maryland, Department of the Environment, Waste Management Administration, Sewage Sludge Permitting Division, as required by state law. Bio–Gro made sewage sludge applications to two of the farms before the Talbot County ordinance became effective. The farmers desired Bio–Gro to continue applying, or in one case, to begin applying, the sludge to their farmlands pursuant to their contracts, but they objected to the various requirements imposed by § 19–8(j) of the Talbot County Code.[2]

The farmers and Bio–Gro Systems, Inc., filed in the Circuit Court for Talbot County a complaint for declaratory and injunctive relief against Talbot County. They claimed that the State, by enacting comprehensive legislation and regulations dealing with sewage sludge, had preempted the field of sewage sludge regulation. They also argued that the State, by enacting comprehensive legislation regarding land records, had preempted "the field of land records, including the regulation of what documents may be recorded or required to be recorded." The plaintiffs further argued that the ordinance was in conflict with state law. In addition, they contended that Talbot County lacked the power to enact § 19–8(j), because the grant of express powers to charter counties does not include the power to enact laws affecting land records or the power to require the recordation of any document in said land records. *See* Code (1957, 1990 Repl.Vol., 1992 Cum.Supp.), Art. 25A. Finally, the plaintiffs contended that the ordinance violated federal and state constitutional equal protection and due

---

2. With regard to the local recording requirement, the farmers were concerned that their land would lose value if they filed in the land records. In their brief, the farmers assert that a landowner would be prejudiced by an assumption that a document required to be filed in the land records "somehow encumbers his or her property." (Appellees' Brief, at 25)

process principles. The plaintiffs sought a permanent injunction barring Talbot County from enforcing § 19–8(j) and barring Talbot County from prosecuting the plaintiffs for violations of the section.[3] The plaintiffs also requested an interlocutory injunction pending trial on the merits. After a response from the defendant, the circuit court granted the interlocutory injunction. Talbot County then answered the complaint, disputing each one of the plaintiffs' contentions.

The case was tried upon an agreed statement of facts. Thereafter, the circuit court entered the following order:

"... it is ... DECLARED that § 19–8(j) of the Talbot County Code is unconstitutional and otherwise invalid because it is pre-empted by existing state law governing sludge application and is pre-empted by existing state law governing land records;

"IT IS ORDERED that Plaintiffs' request for permanent injunctive relief be and is hereby GRANTED and that Defendant Talbot County is permanently enjoined from enforcing § 19–8(j) of the Talbot County Code and from criminally charging and/or prosecuting Plaintiffs for violating § 19–8(j) of the Talbot County Code; and

"IT IS FURTHER ORDERED that Plaintiffs' request for an award of damages, including reasonable attorneys' fees, be and is hereby denied."

The County noted an appeal to the Court of Special Appeals. Before any proceedings in the Court of Special Appeals, the farmers and Bio–Gro filed in this Court a petition for a writ of certiorari which we granted, 322 Md. 132, 586 A.2d 14 (1991).

■ In this Court, Talbot County concedes that §§ 19–8(j)(ii) and (j)(iii) of the Talbot County Code conflict with

---

**3.** Section 19–17 of the Talbot County Code provides that a violation of a code provision is a misdemeanor, punishable by a fine of up to $1,000, by imprisonment of up to 30 days, or both. The section also provides that "[e]ach and every day such violation occurs shall be considered a separate offense."

state law and are thereby preempted.[4] The County contends, however, that the circuit court erred in its determination that § 19-8(j)(i) is preempted by state law. The farmers and Bio-Gro maintain that the circuit court correctly found preemption. As alternate grounds for affirmance, the farmers and Bio-Gro argue that the County had no power to enact § 19-8(j)(i) under the Express Powers Act (Art. 25A), and furthermore that the ordinance was not a "local law" within the meaning of Article XI-A of the Maryland Constitution and the principles set forth in *McCrory Corp. v. Fowler*, 319 Md. 12, 570 A.2d 834 (1990). The farmers and Bio-Gro also reiterate the equal protection and due process arguments made in the circuit court.

■ Under our decisions, state law may preempt local law in one of three ways: 1) preemption by conflict,[5] 2)

---

**4.** A local ordinance is pre-empted by conflict when it prohibits an activity which is intended to be permitted by state law, or permits an activity which is intended to be prohibited by state law. *Boulden v. Mayor,* 311 Md. 411, 415–417, 535 A.2d 477, 479–480 (1988); *Rockville Grosvenor v. Mont. Co.,* 289 Md. 74, 96–99, 422 A.2d 353, 362–364 (1980); *County Council v. Investors Funding,* 270 Md. 403, 421–423, 312 A.2d 225, 235–237 (1973); *City of Baltimore v. Sitnick & Firey,* 254 Md. 303, 313–314, 255 A.2d 376, 380–381 (1969); *Rossberg v. State,* 111 Md. 394, 74 A. 581 (1909). *See also Town of Forest Heights v. Frank,* 291 Md. 331, 336–339, 435 A.2d 425, 428–430 (1981); *Mont. Co. Bd. of Realtors v. Mont. Co.,* 287 Md. 101, 107–110, 411 A.2d 97, 100–102 (1980). Sections 19-8(j)(ii) and (iii) of the Talbot County Ordinance, on their face, would appear to conflict with Code (1982, 1987 Repl. Vol., 1992 Cum.Supp.), § 9-237 of the Environment Article.

Moreover, § 19-8(j)(ii) prohibits utilization of sewage sludge in a Critical Area. This section directly conflicts with COMAR 14.15.02.-02F(1), which permits use of sewage sludge in a Critical Area.

Section 19-8(j)(iii) prohibits utilization of sewage sludge within five hundred feet of a residence or well. This section directly conflicts with COMAR 26.04.06.09A(8), which permits land applications beyond buffer zones of twenty-five feet for non-potable wells, one hundred feet for potable wells and for on-site residences, and two hundred feet for off-site residences.

All of the farmers' state permits contain the COMAR Critical Area and buffer specifications. Sections 19-8(j)(ii) and (iii), therefore, clearly conflict with § 9-237 of the Environment Article, which states: "A sewage sludge utilization permit authorizes the permit holder to utilize sewage sludge according to the terms of the permit."

**5.** *See* note 4, *supra.*

express preemption,[6] or 3) implied preemption.[7] The farmers and Bio–Gro argue that § 19–8(j)(i) both is in direct conflict with state law and has been impliedly preempted by state law. Because, in our view, state law governing sewage sludge utilization has impliedly preempted § 19–8(j)(i), we shall not address the argument that it is in conflict with state law. Moreover, we need not and do not reach the other grounds for § 19–8(j)(i)'s invalidity urged by the farmers and Bio–Gro.

■ Generally, state law preempts by implication local law where the local law "deal[s] with an area in which the [State] Legislature has acted with such force that an intent by the State to occupy the entire field must be implied," *County Council v. Montgomery Ass'n*, 274 Md. 52, 59, 333 A.2d 596, 600 (1975). There is no particular formula for determining whether the General Assembly intended to preempt an entire area, *Howard County v. Pepco*, 319 Md. 511, 523, 573 A.2d 821, 828 (1990), and several factors have been considered in our cases. *See, e.g., Board v. Harker*, 316 Md. 683, 698, 561 A.2d 219, 226–227 (1989); *National Asphalt v. Prince Geo's Co.*, 292 Md. 75, 78–80, 437 A.2d 651, 653–654 (1981); *Rockville Grosvenor, Inc. v. Mont. Co.*, 289 Md. 74, 92–93, 422 A.2d 353, 363 (1980); *County Council v. Montgomery Ass'n, supra*, 274 Md. at 60–64, 333 A.2d at 601–603.

Nevertheless, we have stated that " '[t]he primary indicia of a legislative purpose to preempt an entire field of law is the comprehensiveness with which the General Assembly has legislated in the field.' " *Howard County v. Pepco, supra*, 319 Md. at 523, 573 A.2d at 828, quoting *Board v. Harker, supra*, 316 Md. at 696–697, 561 A.2d at 226. *See Ad + Soil, Inc. v. County Comm'rs*, 307 Md. 307, 328, 513 A.2d 893, 904 (1986); *National Asphalt v. Prince Geo's*

---

6. *See, e.g., Montgomery County v. Atlantic Guns, Inc.,* 302 Md. 540, 489 A.2d 1114 (1985).

7. *See Howard County v. Pepco,* 319 Md. 511, 573 A.2d 821 (1990), and cases there discussed.

*Co., supra,* 292 Md. at 78–79, 437 A.2d at 653; *County Council v. Montgomery Ass'n, supra,* 274 Md. at 61, 333 A.2d at 601.

■ The General Assembly, in §§ 9–230 through 9–249 of the Environment Article, has enacted a very comprehensive scheme regulating all aspects of sewage sludge utilization in Maryland. Section 9–230 directs the Department of the Environment to adopt regulations governing utilization of sewage sludge, requires Department of Agriculture approval of certain regulations, and contains numerous subsections detailing the considerations which the Department must address when drafting its regulations. For example, the Department must consider alternative utilization methods, disease control, advertising requirements for public hearings and public informational meetings, performance bonds, insurance and security requirements, notification procedures, and standards for transporting sludge. § 9–230(b). In addition, subsection (c) requires the Department to consider issues such as methods for calculating loading rates, what crops may be grown on the land to which sewage sludge has been applied, nearby surface and ground water, nearby land uses, nearby sensitive areas such as wetlands, appropriate land for application and appropriate composition of sludge to be used, special requirements for tobacco producing land, and buffer areas to separate the land for sludge application from homes or other property. The Department is also directed to promulgate regulations establishing a mechanism for determining annual generator's fees. § 9–230(d). Pursuant to this section, the Department of the Environment has promulgated fifty pages of regulations which thoroughly address all of these issues. COMAR 26.04.06.01, *et seq.*

Section 9–231 establishes a permit requirement, and § 9–232 specifies the contents of the permit application, requiring, among other things, the written consent of the owner of the land, adequate evidence of bond or other security, and an agreement to permit access to the site for inspections. In § 9–233, the General Assembly specifically ad-

dressed local authority to legislate regarding zoning and land use, required sewage sludge composting facilities to meet all county zoning requirements, and required the Department to obtain from the county government a written statement that it does not oppose issuance of a permit for a composting facility.

Notice of permit applications is provided for in § 9–234. That section deals with the nature of the notice and publication requirements in detail, and specifies the particular procedures whereby public hearings or public informational meetings may be requested. In addition, local health officials are entitled to certain notifications under § 9–235.

The Department is mandated by § 9–236 to issue a permit to an applicant who meets the requirements of the subtitle, and under § 9–237, a permit holder is authorized to utilize sewage sludge according to the terms of the permit. Particulars concerning the term and renewal of a permit are set forth in § 9–238 and § 9–239. Section 9–241 requires the Department to maintain a permanent public record of all permits issued under the subtitle.

The statute dictates that a permit holder must comply with specified additional requirements in order to keep the permit. The holder must maintain a performance bond or other security. § 9–240. The holder must gather and provide the information delineated in § 9–242, as well as any other information required by the Department. § 9–242(5). Additionally, the permit holder must allow inspections under § 9–243, which is a lengthy and detailed section concerning inspection by both Department and local health officials.

In § 9–244, the General Assembly created a "Sewage Sludge Utilization Fund." The section sets forth the scheme for capitalization of the Fund, designates the uses to which it may be put, and enumerates the kinds of expenditures for which the Department should be reimbursed out of the Fund.

Section 9–245 sets forth the grounds for denial of an application for a permit, and § 9–246 specifies the circumstances under which the Department may suspend, revoke, modify, or refuse to renew a permit. In addition to these and the other remedies provided in the subtitle, the Department may bring an action to enjoin the violation of any law, regulation or order concerning sludge utilization. § 9–248. Adjoining landowners, as well as counties and municipal corporations in which a site is located, are given standing to sue the State, or the applicant or permit holder, to require compliance with State law, and to intervene in any civil court proceeding or administrative proceeding with respect to the utilization site. § 9–247. The last section in the subtitle, § 9–249, makes it illegal to utilize sewage sludge in Maryland except in accordance with the Sewage Sludge subtitle or other specified Code provisions.

These statutory provisions manifest the general legislative purpose to create an all-encompassing state scheme of sewage sludge regulation. In fact, in *Ad + Soil, Inc. v. County Comm'rs, supra*, 307 Md. at 328, 513 A.2d at 904, where this Court dealt with the question of whether local zoning laws were preempted by the then-existing state sewage sludge law, the Court pointed out that, at the time the appellant "applied for its state permits, the state law governing sludge utilization operations ... was far from comprehensive." At the time of this Court's decision in *Ad + Soil*, the General Assembly had repealed the statute at issue in *Ad + Soil*, and had enacted the predecessor to the current Sewage Sludge subtitle, which this Court characterized as "a far more detailed" statute. 307 Md. at 329, 513 A.2d at 904. When the present state statutory scheme is compared to the statute at issue in *Ad + Soil*, it is clear that the present state statutory scheme regulating sewage sludge addresses a multitude of additional issues, and is significantly more comprehensive and specific. The statute is "extensive and embrace[s] virtually the entire area involved." *National Asphalt v. Prince Geo's Co., supra*, 292 Md. at 78, 437 A.2d at 653. This comprehensiveness is

strongly indicative of the legislative intent to preempt this entire field from local regulation.

In addition to the comprehensiveness of the state statutory provisions, there are other indications that the General Assembly generally intended to preempt the field of regulating sewage sludge utilization. In those circumstances where the General Assembly intended that local governments may act with regard to sewage sludge utilization, it expressly said so. For example, the General Assembly in § 9–233(1) specifically recognized and provided for local zoning control under certain circumstances. *Compare, e.g., Board v. Harker, supra,* 316 Md. at 698, 561 A.2d at 226–227; *Ad + Soil, supra,* 307 Md. at 334, 513 A.2d at 906–907. The General Assembly also required county approval with respect to a particular type of sewage sludge utilization in § 9–233(2). The state statutory provisions delineate other specific areas of local involvement. These provisions indicate that when the General Assembly intended to authorize local government involvement in sewage sludge utilization, it expressly provided for such involvement. Consequently, where the state statute had not authorized local government involvement, the Legislature likely contemplated that the regulation would be exclusively at the state level. *See Howard County v. PEPCO, supra,* 319 Md. at 525–526, 573 A.2d at 828–829.

Another circumstance indicating an intent that state law preempt local law is where the particular aspect of the field sought to be regulated by the local government is addressed by the state legislation. For example, in *Howard County v. PEPCO, supra,* 319 Md. at 526, 573 A.2d at 829, we noted that the state statute "focuse[d] considerable attention on site selection of the transmission line, its construction and probable impacts upon selected areas." These were the subjects sought to be regulated by the county. *See also County Council v. Montgomery Ass'n, supra,* 274 Md. at 63, 333 A.2d at 602, pointing out that the provisions of the local ordinance had counterparts in the state statutory provisions.

In the instant case, the General Assembly in fact rejected a requirement for recording of sewage sludge permits in the local land records. Senate Bill 748 of the 1984 General Assembly session would have required the recordation of state sewage sludge permits in the county land records, but the bill died in committee. Instead, the General Assembly chose to require recording at the office of the Department of the Environment. Section 9–241 states: "To allow the public to identify every permit that the Department issues for a particular tract of land, the Department shall maintain a permanent public record of all sewage sludge utilization permits issued under § 9–236 of this subtitle." The state public recording requirement, as part of the comprehensive state regulatory scheme, strongly suggests that there was no intent to allow local governments to enact different public recording requirements.

Finally, a requirement that a *state* sewage sludge utilization permit be recorded among the circuit court land records is not a traditional type of local government regulation. It is not the type of local ordinance which the General Assembly, if it intended preemption, would have been expected to have expressly disallowed. *Cf. Ad + Soil, Inc. v. County Commrs, supra,* 307 Md. at 333, 513 A.2d at 906.

Therefore, we agree with the circuit court that § 19–8(j) of the Talbot County Code has been preempted by state law.

JUDGMENT AFFIRMED, WITH COSTS.