Dear George A. Nilson
You have requested our opinion about a bill recently passed by the Baltimore City Council and awaiting action by the Mayor. The proposed City ordinance would require a gun owner to report the theft or loss of a firearm within two days of discovering that the weapon has been lost or stolen. Failure to report the theft or loss within the time specified could result in the issuance of a civil citation or criminal misdemeanor charges. You ask whether the ordinance is preempted by provisions of the State firearms law that prohibit local regulation of the possession, transfer, or ownership of a firearm.
In compliance with our policies concerning opinion requests from local governments, you provided a legal opinion of your office on this question. That opinion concluded that the proposed ordinance is not preempted by State law. It reasoned that "notifying the police of a lost or stolen firearm does not regulate the requirements of possession or ownership," but merely imposes an obligation after the individual has lost the firearm.
We agree with your conclusion. Because the ordinance applies only to the gun owner, it arguably touches upon the ownership of firearms. However, apart from the duty to report the loss of the firearm, the ordinance does not otherwise restrict, control, or affect the ownership, possession, or use of firearms. Its effect, if any, on gun ownership is too remote to be deemed a regulation of ownership, such that it would be expressly preempted by State statute. Moreover, the measure is consistent with the State law prohibitions against illegal gun trafficking and does not otherwise conflict with State law. *Page 127 
 I Background
A. Proposed City Ordinance
The proposed City ordinance is entitled Council Bill 08-0046, "Firearms — Reporting Theft or Loss." It would amend Article 19 ("Police Ordinances") of the Baltimore City Code by creating a duty for owners of firearms to report the theft or loss of any firearm. Proposed Baltimore City Code § 59-18 states:
 If a firearm is lost or stolen, the person who owned the firearm shall report the theft or loss to the Baltimore Police Department. The report shall be made within 48 hours after the theft or loss is first discovered.
The Police Department is directed to enter certain identifying information about the firearm, "to the extent known," into the National Crime Information Center ("NCIC") Database. Proposed § 59-19. For purposes of the ordinance, "firearm" is defined to include "any pistol, revolver, rifle, shotgun, short-barreled rifle, short-barreled shotgun, or other firearm." Proposed § 59-17. The ordinance provides for enforcement by civil citation, Proposed § 59-20A, and by criminal prosecution, Proposed § 59-20B.
Proponents of the measure when it was before the City Council described it as a "tool" needed by law enforcement to "get illegal guns off the streets," a top priority in the City's overall anti-crimestrategy. See Letter from Sheryl Goldstein, Director, Mayor'sOffice on Criminal Justice, to Honorable Stephanie Rawlings Blake and Members of the Baltimore City Council (June 10, 2008); Letter fromJames H. Green, Deputy Legal Counsel, Baltimore Police Department, to President and Members of the Baltimore City Council (June 12, 2008). The ordinance would achieve this, they contended, by aiding the recovery of weapons that are in fact lost or stolen, and by discouraging illegal secondary sales where the false claim that a gun has been lost or stolen allows gun traffickers to avoid legal responsibility.
Timely reporting of missing firearms can facilitate return of the weapons to the lawful owner, particularly before they "fall into the wrong hands." Goldstein Letter at 2 (noting that nationally 25% of "crime guns" are acquired by theft); see also Green Letter at 2. In *Page 128 
addition, a prompt reporting requirement may help deter illegal straw purchases.[1] Green Letter at 2 (the ordinance "will help to crack down on straw purchases and the illegal secondary market."). The alleged theft or loss of a firearm often provides illegal gun traffickers with a "convenient cover for illegal secondary gun transfers" when police have traced a recovered weapon back to its owner. Goldstein Letter at 2. A prompt reporting requirement for missing weapons would therefore discourage such illegal transactions.
Other states and local jurisdictions outside Maryland have adopted "Lost or Stolen" laws similar to the one passed by the Baltimore City Council.[2]
B. Preemption Provisions of State Firearms Law
The General Assembly has passed a number of statewide gun control measures. As part of those laws, it has explicitly preempted local regulation of firearms in several statutes. One such statute is Annotated Code of Maryland, Criminal Law Article ("CR"), § 4-209. It states: *Page 129 
 Except as otherwise provided in this section, the State preempts the right of a county, municipal corporation, or special taxing district to regulate the purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and transportation of:
 (1) a handgun, rifle, or shotgun; and
 (2) ammunition for and components of a handgun, rifle, or shotgun.
CR § 4-209(a). The statute further identifies three subject areas expressly excepted from State preemption. CR § 4-209(b). These exceptions concern local laws regulating firearms (i) with respect to minors, (ii) with respect to law enforcement officials of the subdivision, and (iii) within 100 yards of a park, church, school, public building and other places of "public assembly." Id. The statute also lets stand all local laws existing as of December 31, 1984, if not inconsistent with CR § 4-209, including subsequent amendments to such laws provided they do not expand "existing regulatory control." CR § 4-209(c). Finally, CR § 4-209(d) allows a local government to regulate the discharge of firearms within its jurisdiction. This statute broadly preempts local regulations within its scope, and the exceptions are to be narrowly construed. See Mora v. City of Gaithersburg,462 F.Supp.2d 675, 690 (D. Md. 2006).
Other preemption provisions in State law relate specifically to "regulated firearms" — i.e., handguns and assault weapons — and preempt local regulation of the possession, sale, transfer, or transport of such firearms. See Annotated Code of Maryland, Public Safety Article ("PS"), § 5-104 (preempting local regulation of the sale of a regulated firearm); PS § 5-133(a) (preempting local restrictions on the possession of a regulated firearm); PS § 5-134(a) (preempting local regulation of the transfer of a regulated firearm); Chapter 13, § 6, Laws of Maryland 1972 (preempting local regulation of wearing, carrying, and transporting of handguns).
Broadly stated, the question you pose is whether the General Assembly, through the preemption provisions of the State firearms laws, intended to deny Baltimore City the power to require that lost *Page 130 
or stolen firearms be reported, without delay, to the Baltimore City Police Department.[3]
 II Preemption Analysis
An otherwise valid local law may be preempted by State law in three ways: expressly, by conflict, or by implication. See, e.g., Tyma v.Montgomery County, 369 Md. 497, 517 n. 16, 801 A.2d 148 (2002) (citing cases). Express preemption occurs when the General Assembly prohibits local legislation in a particular field by express statutory language.Ad + Soil, Inc. v. County Commissioners, 307 M d. 307, 324, 513 A.2d 893
(1986). There is preemption by conflict "when [local law] prohibits an activity which is intended to be permitted by state law, or permits an activity which is intended to be prohibited by state law." Talbot Countyv. Skipper, 329 Md. 481, 487 n. 4, 620 A.2d 880 (1993). Preemption by implication, or "implied preemption," occurs when the Legislature "has acted with such force that an intent by the State to occupy the entire field" must be inferred. Id. at 488.
Because the General Assembly has explicitly dealt with the preemptive effect of State firearms regulation in several statutes, we focus primarily on express preemption and only briefly discuss the other modes of preemption.[4] *Page 131 
A. Express Preemption
As noted above, CR § 4-209(a) bars local legislation with respect to "the purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and transportation" of certain firearms, firearms components, and ammunition. The express preemption sections in the Public Safety Article relate to, cumulatively, sales, rental, transfer, and possession of regulated firearms. See PS §§ 5-104 (sales of regulated firearms); 5-134 (sale, rental, or transfer of regulated firearms); 5-133 (preempting local restrictions or regulations on possession of a regulated firearm). Also, an uncodified 1972 preemption provision concerns the wearing, carrying, and transporting of handguns.
The proposed City ordinance would not affect in any way the right to manufacture, sell, transfer, possess, transport, repair, or use any firearm. With respect to "possession," as you have observed, the duty to report arises only after one's possession has ended. Further, so long as the firearm remains in the owner's possession, the ordinance neither directly nor indirectly prescribes any new behavior or qualification for retaining possession. It demands no additional record-keeping or marking of firearms[5] and imposes no obligations on storage or safekeeping. Possessory interests are left completely undisturbed. In short, the ordinance adds nothing to the obligations under existing law unless and until the owner discovers that a firearm has been lost or stolen. In that event, the gun owner must make a prompt report of the loss of the gun.
It seems plain, therefore, that neither the express preemption statutes concerning the possession, sale, rental or transfer of regulated firearms in the Public Safety Article nor the uncodified 1972 law preempting local regulation of the wearing transporting or carrying of handguns encompass this ordinance. For the same reasons, the preemption of local regulation of the purchase, sale, *Page 132 
taxation, transfer, or manufacture of handguns, rifles and shotguns in CR § 4-209(a) do not apply either.
It might be argued, however, that the ordinance affects gun ownership, since the duty to report under the ordinance falls upon the owner of the gun, upon "discovery" that the firearm has been lost or stolen. CR § 4-209(a) preempts a local government's power to "regulate . . . [firearm] ownership." Thus, only to the extent that the ordinance could be construed as a regulation of ownership would it come within the scope of any of the State preemption statutes. If the ordinance is within the scope of CR § 4-209, none of the exceptions to preemption in that statute would apply — that is, the duty imposed by the proposed ordinance on a gun owner does not relate to minors, places of public assembly, law enforcement officers, or the discharge of firearms. CR § 4-209(b)-(d).
Therefore, the answer to your question turns on whether a local duty to report the loss or theft of firearms is a regulation of ownership ofa firearm within the meaning of CR § 4-209.[6] If it is, *Page 133 
the proposed ordinance is preempted. If it is not, the ordinance may stand.
In our view, the ordinance has such a minimal effect on ownership that it cannot be deemed to "regulate" gun ownership. It does not regulate who may own a gun or what one may do with a gun one owns. It imposes no duty, actual or implied, to inventory weapons nor any heightened duty of care with regard to the control or safekeeping of firearms (notwithstanding other tort or firearms laws that may apply). An owner is entitled to keep, store, maintain, safeguard, transport, use, or dispose of the firearm exactly as allowed under existing law. A violation of the duty to report a loss may result in civil or criminal penalties, but the ordinance does not purport to affect the owner's right or qualifications to purchase, own, or possess a firearm. In sum, the proposed ordinance does not diminish or condition an individual's ownership of a firearm. Rather, it enlists the police to vindicate the ownership right when that right is violated. That local officials have judged the measure also useful in combating illegal trafficking in firearms does not intrude upon the exclusive State regulatory function with respect to ownership of firearms.
The evident intent of a preemption provision like CR § 4-209 is to ensure some uniformity in statewide regulation of firearms. The State regulatory scheme provides for a single statewide firearms permit, registration, and licensing system; a unified approach to regulating the manufacture, sale, or transfer of most firearms, ammunition, and "component parts"; consistency with respect to firearm identification and markings; and uniform standards with respect to the qualifications for ownership and possession, as well as the right to wear, carry, or transport firearms within the State. The legislative history of CR § 4-209 confirms that a desire for statewide uniformity was the impetus behind the provision. See Report of Senate Judicial Proceedings Committee concerning Senate Bill 88 (1985) (the "bill is important to the tourism industry in Maryland, *Page 134 
which needs uniformity from one county to another for hunters from other states").[7]
Despite the broad preemptive effect of CR § 4-209, it is also clear that the statute was not intended to prohibit any and all local legislation that touches upon any matter that may relate to guns, even if it does not burden the ownership, possession, or transfer of a firearm. As a prior opinion noted, the preemption language of CR § 4-209
is the product of legislative compromise following a veto that was exercised, in part, because of Governor Hughes' unwillingness to discard "beneficial existing local legislation" wholesale for the sake of uniformity. See 76 Opinions of the Attorney General at 245 (quoting the veto statement relating to prior version of bill).[8] Moreover, while State preemption of local firearms regulation is undeniably broad, the preemption statutes are also specific — they preempt regulation of specific activities such as the transport of handguns, the sale or manufacture of firearms, or the ownership or possession of firearms. This is in contrast to other instances in which the Legislature has preempted local legislation in a more open-ended way. See,e.g., Annotated Code of Maryland, Transportation Article, § 25-101.1
(preempting "any local law . . . on any subject covered by the Maryland Vehicle Law", subject to specific exceptions) (emphasis added).
In sum, it is our view that the express preemption of local power to "regulate . . . ownership" of firearms should not be *Page 135 
construed so broadly as to preclude a reporting requirement for lost or stolen weapons.[9]
B. Preemption by Conflict
As indicated above, the basic rule is that a local law is preempted by conflict when a local law prohibits an activity which is intended to be permitted by state law, or permits an activity which is intended to be prohibited by state law. In general, some element of irreconcilability or legal inconsistency is required, such that both the State and local laws cannot be applied together. City of Baltimore v. Sitnick,254 Md. 303, 317, 255 A.2d 376 (1969). But mere lack of uniformity in detail does not create a legal inconsistency or conflict. Id.
Does the proposed ordinance conflict with any right conferred by the State firearms law? Under the ordinance, a gun owner who involuntarily loses possession of a gun by theft or otherwise must report the loss to the police. Thus, the question becomes: does a gun owner have a right under the State firearms law to abandon a gun anonymously if the ownership right has been illegally violated (theft) or otherwise involuntarily interrupted?
It does not require an exhaustive recapitulation of the State firearms law to know that the answer to this question is "no." Such a right would be at odds with the multiple measures under that law designed to ensure that firearms do not fall into the hands of disqualified persons. Indeed, the proposed ordinance is wholly consistent with State laws against illegal trafficking in firearms. See generally PS § 5-134
(prohibiting sale to suspected "straw purchaser"); PS § 5-136(b) (prohibiting knowing or willful participation in "straw purchase"); PS § 5-141(b) (penalty for participation in "straw purchase"). Encouraging timely reporting of missing firearms (and listing those weapons in the NCIC Database) complements State provisions designed to reduce the trade in stolen weapons and to prevent felons and other prohibited persons from *Page 136 
acquiring firearms. See, e.g., PS § 5-124 (applying the same scrutiny to secondary transactions as to initial purchases from dealers), PS § 5-131
(handgun identification requirements).
Moreover, the State firearms statutes do not generally address the theft or loss of a firearm or the reporting of such an event.[10] The proposed ordinance will thus result in some lack of uniformity among local jurisdictions, but not in a legal inconsistency or conflict. Here, the local law does not prohibit an activity intended to be permitted by State law. No provision in State law is intended to permit lost or stolen guns to go unreported. Conversely, the ordinance does not authorize anything prohibited by State law. The involvement of local police in tracking lost or stolen weapons does not intrude upon any exclusive State function or impede any effort or initiative of the State Police. Accordingly, we see no basis for preemption by conflict.
C. Implied Preemption
Finally, there appears to be little basis for concluding that the Legislature "has acted with such force that an intent by the State to occupy the entire field" should be implied to encompass the proposed ordinance. Talbot County v. Skipper, supra. Without repeating the discussion in the prior sections, the Legislature has expressly and broadly preempted local regulation of the manufacture, sale, ownership, possession, and transfer of firearms and has enacted specific exceptions to that preemption. We cannot conclude that it intended to preempt all local laws that are in any degree related to firearms. *Page 137 
 III Conclusion
In our opinion, the requirement in the proposed ordinance to report a lost or stolen firearm cannot be fairly characterized as a regulation of gun ownership, such that it would be expressly preempted by CR § 4-209. Moreover, the measure is consistent with the State law prohibitions against illegal gun trafficking and does not otherwise conflict with State law.
Douglas F. Gansler Attorney General
Robert N. McDonald Chief Counsel Opinions and Advice
[1] In general, a "straw purchase" occurs when the apparent buyer illegally acquires a firearm on behalf of a person who is prohibited by law from acquiring, owning, or possessing a firearm. See Annotated Code of Maryland, Public Safety Article ("PS"), § 5-101(t) (defining "straw purchase"); PS § 5-136(b) (prohibiting knowing or willful participation in straw purchase of a regulated firearm); PS § 5-138 (sale, transfer or disposal of stolen regulated firearm prohibited); PS § 5-141 (penalties for knowing participation in straw purchase transaction).
[2] Mandatory reporting of lost or stolen guns has been adopted in Connecticut (Conn. Gen. Stat. § 53-202g); Massachusetts (Mass. Gen. Laws ch. 140, § 129C); Michigan (Mich. Comp. Laws § 28.430); New Jersey (N.J. Stat. Ann. § 2C:58-19); New York (N.Y. Penal Law § 400.10); Ohio (Ohio Rev. Code Ann. § 2923.20(A)(5), (B)) and Rhode Island (R.I. Gen. Laws § 11-47-48.1). Chicago, Los Angeles, Philadelphia and other local jurisdictions have also passed mandatory reporting laws. See Chicago Code, § 8-20-140(a)(1); Los Angeles Code, Ch. V, § 55.12; Philadelphia Code, § 10-838. Under federal law, licensed firearms dealers have an obligation to report firearms which are lost or stolen from their dealer inventory. See 18 U.S.C. § 923(g)(6).
[3] We note that this is a question of State law and that the recent Supreme Court decision applying the Second Amendment to the District of Columbia gun law has no bearing on our analysis. See District ofColumbia v. Heller, 554 U.S. ___, 128 S. Ct. 2783 (2008). As the Court acknowledged in that case, the Second Amendment has been held not to apply to the states. 128 S.Ct. at 2813 n. 23. Moreover, even if the Second Amendment were extended to the states, most existing state and local regulation of firearms in Maryland would likely be upheld under the Heller analysis. See Letter of Assistant Attorney General KathrynM. Rowe to Delegate Samuel I. Rosenberg (July 18, 2008).
[4] In the context of federal preemption of state law, the Supreme Court has observed that Congress' inclusion of an express preemption clause does not foreclose the possibility of preemption by other modes.See Sprietsma v. Mercury Marine, 537 U.S. 51, 65 (2002) (express preemption clause "does not bar the ordinary working of conflict preemption principles"); Freightliner Corp. v. Myrick, 514 U.S. 280, 288
(1995) (express preemption clause does not foreclose possibility of implied preemption).
[5] The police report concerning the lost or stolen firearm provides that the missing firearm is to be identified "to the extent known." Proposed § 59-19.
[6] To our knowledge, no cases or other authority in Maryland or elsewhere have yet construed a preemption provision concerning firearms ownership in relation to a local reporting requirement for lost or stolen firearms.
A federal district court decision has held that a municipality was preempted under CR § 4-209 from requiring completion of a special questionnaire as a condition for the return of seized firearms seized by local police. Mora v. City of Gaithersburg, 462 F.Supp.2d 675, 693
(D. Md. 2006).
Two Attorney General opinions have construed the scope of the exceptions to preemption under prior versions of CR § 4-209. One opinion concerned a local ordinance that prohibited leaving a loaded firearm — or an unloaded firearm near ammunition — in the proximity of a child, with an exception for guns secured in a locked gun cabinet or by a trigger lock. 76 Opinions of the Attorney General 240 (1991). The second opinion concerned proposed local laws requiring gun dealers to provide trigger locks with handguns. 82 Opinions of the Attorney General 84 (1997). In neither instance was the applicability of CR § 4-209(a) in question. Instead, those opinions concerned the applicability of the "related to minors" exception. See CR § 4-209(b)(i).
In an opinion prior to the enactment of the predecessor of CR § 4-209
(which expressly preempts local regulation of ammunition), Attorney General Sachs advised that proposed restrictions on the sale and possession of handgun ammunition in Montgomery County were, in effect, regulations on the sale and possession of handguns, and thus preempted by the State laws preempting local regulation of handgun possession and transfers. 67 Opinions of the Attorney General 316 (1982); see alsoMontgomery County v. Atlantic Guns, Inc., 302 Md. 540, 489 A.2d 1114
(1985).
[7] The legislative history of this statute was examined in detail in a prior opinion. 76 Opinions of the Attorney General 240, 243-47 (1991).
[8] The "carve-outs" for local ordinances in effect as of 1985 (CR § 4-209(c)) and the exception for regulation "with respect to minors" (CR § 4-209(b)(i)) are also at odds with any intention to attain or preserve complete statewide uniformity. The legislative file confirms that the preemption provision was carefully defined. See Report of Senate Judicial Proceedings Committee concerning Senate Bill 88 (1985) ("The bill's intent is to reserve within the General Assembly theprimary power to regulate some forms of weaponry and ammunition" (emphasis added). Moreover, as Attorney General Sachs pointed out at the time, the effect of the bill might be in some respects toreduce State preemption of local laws that would otherwise be invalidunder older law. See Letter from Stephen H. Sachs, Attorney General, to the Hon. Harry Hughes, Governor of Maryland (May 23, 1985), p. 3 ("the new authority to regulate in specific ways would control over the older broad preemption").
[9] We note that, in other contexts, legislatures sometimes impose reporting requirements on a person without purporting to otherwise regulate the person's activities. See, e.g., Annotated Code of Maryland, Family Law Article, § 5-705(requiring, with some exceptions, any person in the State with knowledge of child abuse or neglect to make a report to a local department of social services or law enforcement agency);see also 75 Opinions of the Attorney General 415 (1990).
[10] The State firearms law refers to a report of the loss or theft of a firearm in only one instance. Subject to various exceptions, a person may purchase no more than one regulated firearm in a 30-day period. PS 5-128(b). One of the exceptions to that rule pertains to a situation in which an individual has suffered a recent theft or loss of a regulated firearm and can satisfy certain conditions, including provision of a report of the theft or loss to the police. PS § 5-128(a)(8).
[*] Jeffrey Darsie contributed significantly to the preparation of this opinion. *Page 138