65 A.3d 118

**ALTADIS U.S.A., INC., et al.**

v.

**PRINCE GEORGE'S COUNTY, MARYLAND.**

**No. 85 Sept. 2010.**

Court of Appeals of Maryland.

April 25, 2013.

James K. Archibald, (Maria E. Rodriguez of Venable, LLP, Baltimore, MD; Gregory K. Wells of Shadoan, Michael & Wells, Rockville, MD), on brief; Timothy F. Maloney, (Joseph

M. Creed of Joseph, Greenwald & Laake, P.A., Greenbelt, MD), on brief, for Petitioners.

David M. Funk, (Karen J. Kruger of Funk & Bolton, P.A., Baltimore, MD), on brief, for Respondents.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE,\*MURPHY, ADKINS ELDRIDGE, and JOHN C. (Retired, Specially Assigned), JJ.

ELDRIDGE, J.

This Court granted petitions for a writ of certiorari in the present case to decide the validity, under Maryland law, of two Prince George's County ordinances regulating, *inter alia*, the packaging, sale or other distribution of cigars. The petitioners challenge the validity of the ordinances on several alternative grounds. They contend that the ordinances are not "local laws" and that, therefore, the ordinances exceed the County's authority under Article XI–A of the Maryland Constitution. The petitioners also maintain that the two ordinances conflict with the state statutes regulating the packaging and sale of cigars, and, consequently, the ordinances are void under the principle of preemption by conflict. In addition, the petitioners invoke the doctrine of "implied preemption" or "preemption by occupation," arguing that the General Assembly has legislated in the area with such force that an intent to occupy the entire field must be implied. Finally, some of the petitioners contend that the ordinances violate both the equal protection and the due process components of Article 24 of the Maryland Declaration of Rights.[1]

We shall hold that state law occupies the field of regulating the packaging and sale of tobacco products, including cigars, and thus impliedly preempts the two ordinances enacted by

---

\* Judge Murphy, now retired, participated in the hearing and conference of this case while an active member of the Court, but did not participate in the decision or adoption of this opinion.

1. No federal constitutional or statutory issues have been raised by the parties. The arguments have been based only upon Maryland law.

the County Council of Prince George's County. In light of this holding, we need not and shall not reach any of the other issues raised by the parties.

## I.

The Prince George's County ordinances regulating the packaging, sale or distribution of cigars are CB–47–2008, passed by the Prince George's County Council and signed by the County Executive in November 2008, and CB–6–2009, amending CB–47–2008, and adopted by the Council and signed by the Executive in April 2009. The ordinances were codified as parts of §§ 12–201 through 12–204 of the Prince George's County Code. The petitioners do not challenge any parts of these code sections other than the provisions added by the two ordinances regulating cigars. Consequently, any issues concerning the other provisions in §§ 12–201 through 12–204 of the Prince George's County Code are not before us.

The ordinances in question prohibit the purchase, sale, distribution, or gift, by a retailer, wholesaler, or their agent or employee, of individual or "unpackaged" cigars. The term "unpackaged cigars" is defined as "any cigar or cigar product not contained within a sealed original package of at least five (5) cigars or cigar products." *See* § 12–201(a)(8) of the Prince George's County Code. The requirement that cigars be sold, distributed, etc., in sealed packages of at least five cigars does not apply to "the sale or other distribution of any cigar that . . . has a wholesale price of more than $2.00 or a retail price of more than $2.50." *Id.* at § 12–204(b)(1). Similarly, the packaging requirement does not apply to the sale of any cigar on the premises of a retail tobacco establishment that "[d]erives at least 75% of its revenues, measured by average daily receipts, from the sale of non-cigarette tobacco products." *Id.* at § 12–204(b)(2)(i). The packaging requirement also does not apply to the sale or distribution of cigars "[m]ade by one person engaged in the business of distributing cigars to another person engaged in the business of distributing cigars." *Id.* at § 12–204(b)(3)(i). In addition, the packaging requirement is inapplicable to the sale or other distribution of cigars if the

sale or other distribution is "[f]or the purpose of reselling or otherwise redistributing the cigars outside of" Prince George's County. *Id.* at § 12–204(b)(3)(ii).

The purpose of the ordinances, as set forth in their titles, was to prohibit the sale or other distribution of cigars "intended for use, or designed for use, in ingesting, inhaling or otherwise introducing marijuana, cocaine, hashish or hashish oil into the human body...." There was testimony before the County Council that users of these substances would often purchase inexpensive cigars, remove some of the inside tobacco, and replace it with one of the above-mentioned substances. Testimony before the County Council in support of the ordinances also indicated that the ordinances would decrease the smoking of tobacco.

Soon after ordinance CB–47–2008 was signed into law, two groups of plaintiffs filed complaints in the Circuit Court for Prince George's County, against Prince George's County, arguing that the ordinance, insofar as it regulated the sale and distribution of cigars, was invalid. They sought a declaratory judgment and injunctive relief. One group of plaintiffs, referred to as the "Altadis" group, included cigar manufacturers, a national cigar trade association, and a major cigar distributor and wholesaler. The other group of plaintiffs, referred to as the "Plescia" group, included a Prince George's County resident and taxpayer, two Prince George's County tobacco retailers, and a Maryland tobacco distributor and wholesaler. The two complaints were consolidated by the Circuit Court. When ordinance CB–6–2009 was enacted in April 2009, the plaintiffs amended their complaints to include a challenge to that ordinance.

All parties filed motions for summary judgment. Following a hearing and the submission of memoranda, the Circuit Court granted the defendants' motions for summary judgment, denied the plaintiffs' motions for summary judgment and for an injunction, and filed an extensive written opinion/declaratory judgment rejecting each of the plaintiffs' contentions.

The plaintiffs filed notices of appeal to the Court of Special Appeals. Prior to any proceedings in the Court of Special Appeals, the plaintiffs filed petitions for a writ of certiorari which were granted. *Altadis U.S.A., Inc. v. Prince George's County,* 415 Md. 607, 4 A.3d 512 (2010).

## II.

This Court has frequently pointed out that Maryland state law may preempt local law in one of three ways: 1. preemption by conflict,[2] 2. express preemption,[3] or 3. implied preemption.[4] As earlier indicated, we shall in the present case be concerned with implied preemption or, as it is sometimes referred to, preemption by occupation.

The principle that the General Assembly may occupy a particular field so extensively as to preclude local legislation, was first recognized in *City of Baltimore v. Sitnick & Firey,* 254 Md. 303, 323, 255 A.2d 376, 385 (1969), where Judge Finan for the Court observed that

> "there may be times when the legislature may so forcibly express its intent to occupy a specific field of regulation that the acceptance of the doctrine of pre-emption by occupation is compelled...."

---

**2.** *Holiday v. Anne Arundel,* 349 Md. 190, 210, 707 A.2d 829, 839 (1998) (" 'A local ordinance is preempted by conflict when it prohibits an activity which is intended to be permitted by state law, or permits an activity which is intended to be prohibited by state law,' " quoting *Talbot County v. Skipper,* 329 Md. 481, 487 n. 4, 620 A.2d 880, 882–883 n. 4 (1993)). *See, e.g., Md. Reclamation v. Harford County,* 414 Md. 1, 36–37, 994 A.2d 842, 863 (2010); *Worton Creek v. Claggett,* 381 Md. 499, 512–516, 850 A.2d 1169, 1176–1178 (2004); *Coalition v. Annapolis Lodge,* 333 Md. 359, 379–380, 635 A.2d 412, 422 (1994); *Allied Vending v. Bowie,* 332 Md. 279, 297–298 n. 12, 631 A.2d 77, 86 n. 12 (1993).

**3.** *See, e.g., Montgomery County v. Atlantic Guns, Inc.,* 302 Md. 540, 489 A.2d 1114 (1985).

**4.** *See, e.g., Holiday v. Anne Arundel, supra,* 349 Md. at 212–214, 707 A.2d at 840–841; *Allied Vending v. Bowie, supra,* 332 Md. at 297–310, 631 A.2d at 86–92, and cases there cited.

The first case in this Court to hold that local legislation was invalid under the principle of implied preemption was *County Council v. Montgomery Association,* 274 Md. 52, 333 A.2d 596 (1975). At issue in that case were three Montgomery County ordinances designed to regulate the campaign finance practices of candidates for County Executive and County Council in Montgomery County. This Court in *County Council v. Montgomery Association,* after reviewing the comprehensive state legislation regulating and controlling elections for state and county offices, concluded as follows (274 Md. at 62, 333 A.2d at 602, footnote omitted):

> "This pervasive state administrative control of the election process, on both the statewide and local levels, is a compelling indication that the General Assembly did not intend that local governments should enact election laws, but rather intended that the conduct and regulation of elections be strictly a state function."

Soon after the *County Council v. Montgomery Association* case, this Court in *McCarthy v. Bd. of Education of A.A. County,* 280 Md. 634, 374 A.2d 1135 (1977), held that, in light of the extensive state legislation and state control of education, ordinances by the Anne Arundel County Council, imposing certain school transportation duties on the Anne Arundel Board of Education, were impliedly preempted. Judge Smith for the Court concluded in the *McCarthy* case as follows (280 Md. at 650–651, 374 A.2d at 1144):

> "This case represents an excellent example of what the Court had in mind in *City of Baltimore v. Sitnick & Firey, supra,* 254 Md. 303, 323, [255 A.2d 376], when it referred to the fact that the General Assembly might 'so forcibly express its intent to occupy a specific field of regulation that the acceptance of the doctrine of preemption by occupation is compelled....' Our recital of legislation by the State in the field of education demonstrates the occupation of that field by the State. We conclude, therefore, that the County Council of Anne Arundel County was without power to legislate in this field and to place additional duties upon a

State agency, the Board of Education of Anne Arundel County."

See also Mont. Co. Bd. of Realtors v. Mont. Co., 287 Md. 101, 110, 411 A.2d 97, 102 (1980) (In striking down certain county tax ordinances, this Court held, inter alia, "that a county may not enter into a field which the State has occupied and preempted as here"); National Asphalt v. Prince George's Co., 292 Md. 75, 79, 437 A.2d 651, 653 (1981) (Holding that state laws regarding employment discrimination did not impliedly preempt local employment discrimination ordinances because the state legislation was not "extensive" and did "not comprehensively cover the entire field"); Howard County v. PEPCO, 319 Md. 511, 523, 573 A.2d 821, 828 (1990) ("[W]e adhere to the rule that '[t]he primary indicia of a legislative purpose to preempt an entire field of law is the comprehensiveness with which the General Assembly has legislated in the field,'" quoting Board v. Harker, 316 Md. 683, 696–697, 561 A.2d 219, 226 (1989)); Talbot County v. Skipper, 329 Md. 481, 489, 492, 620 A.2d 880, 883, 885 (1993) (State comprehensive legislation "regulating all aspects of sewage sludge utilization" was "strongly indicative of the legislative intent to preempt this entire field from local regulation." In addition, there were "other indications that the General Assembly generally intended to preempt the field"); Soaring Vista v. Queen Anne's County, 356 Md. 660, 741 A.2d 1110 (1999) (same).

A case which is somewhat similar to the present one is Allied Vending v. Bowie, 332 Md. 279, 631 A.2d 77 (1993). Allied Vending involved the validity of two ordinances, enacted by two municipalities, which regulated to some extent the sale of cigarettes through state-licensed cigarette vending machines. One ordinance provided that "[n]o person shall sell tobacco products through a vending machine without first obtaining a permit for the placement of a cigarette vending machine in compliance with" the ordinance. 332 Md. at 283, 631 A.2d at 78. The ordinance then listed numerous restrictions upon the placement of cigarette vending machines. The other municipal ordinance was similar. Prior to the enact-

ment of these two municipal ordinances, the licensing and regulation of cigarette vending machines had been exclusively a matter of state law.

In an opinion by Judge Karwacki, this Court in *Allied Vending* held that the two municipal ordinances were impliedly preempted by state law and were, therefore, invalid. The Court initially pointed out that, until the enactment of the two subject ordinances, "the licensing of cigarette vending machines was accomplished exclusively in accordance with" state law. *Allied,* 332 Md. at 288, 631 A.2d at 81. The *Allied* opinion then reviewed the comprehensive state law provisions regulating the licensing and sale of cigarettes "at wholesale, retail, over-the-counter, and through cigarette vending machines." *Allied,* 332 Md. at 288–289, 631 A.2d at 81. The Court described the different types of state licenses for operating cigarette vending machines, depending upon the number of machines operated by the licensee. With regard to the license required by state law, the Court pointed out (332 Md. at 289–290, 631 A.2d at 82, footnote omitted):

"In addition to obtaining either a cigarette vending machine operator's license or a cigarette retailer's license for each cigarette vending machine, a vendor is required to obtain for each vending machine a license to make retail sales of cigarettes ('county license') from the clerk of the circuit court for the county where each cigarette vending machine is located for a fee of $25.00 . . . . The county license, required to make retail sales of cigarettes, has been required since 1890. *See* Chapter 91 of the Acts of 1890. The cigarette vending machine operator's license and the cigarette retailer's license have been required since 1956. *See* Chapter 90 of the Acts of 1956."

The *Allied* opinion went on to describe in detail the numerous requirements, under state law, for obtaining the various types of licenses to sell cigarettes and the restrictions imposed on licenses concerning, for example, the locations of cigarettes vending machines, the display of cigarette packages, the display on each vending machine of the licensee's name, telephone number, and address, the display of the minimum age

requirements for purchasing cigarettes from a vending ma-
chine, and other provisions concerning the sale of cigarettes
through vending machines. Judge Karwacki for the Court
then concluded (*Allied*, 332 Md. at 300, 631 A.2d at 87):

"In light of the comprehensive state-licensing scheme for
cigarette vending machines provided by Article 56, §§ 607
through 631, we conclude that the sale of cigarettes through
cigarette vending machines is one of those 'area[s] in which
the Legislature has acted with such force that an intent by
the State to occupy the entire field must be implied. . . .'
*Montgomery Ass'n*, 274 Md. at 59, 333 A.2d at 600."

The Court in *Allied* also pointed out that other factors
supported its preemption conclusion. These included the Gen-
eral Assembly's exclusive regulation of the sale of cigarettes
since 1890 and the General Assembly's exclusive licensing and
regulation of cigarette vending machines since 1956. The
Court commented that the two municipal "ordinances attempt
to regulate an area in which no local control has traditionally
been allowed," *Allied*, 332 Md. at 302, 631 A.2d at 88. The
Court in *Allied* also expressed the view that, with regard to
cigarette vending machines, a "multi-tiered regulatory process
depending on the number of jurisdictions that enact similar
ordinances, would invite chaos and confusion," 332 Md. at 303,
631 A.2d at 89. Finally, the *Allied* opinion pointed out that, in
recent years, "the General Assembly has experienced a spate
of legislative activity concerning the sale of cigarettes from
vending machines," *ibid.* Although the then bills which had
been considered by the General Assembly had not passed, the
Court observed (*Allied*, 332 Md. at 304, 631 A.2d at 89):

"If the General Assembly intended to change existing law
governing the sale of cigarettes through vending machines,
it certainly has had the opportunities to do so. The failure
to enact such measures 'strongly suggests that there was no
intent to allow local governments to enact different . . .
requirements.' *Skipper*, 329 Md. at 493, 620 A.2d at 886."

This Court in *Allied* concluded that "the General Assembly
has manifested an intent for the State to completely occupy

the field of the sale of cigarettes through vending machines" (332 Md. at 310, 631 A.2d at 92).

In light of *Allied, Talbot County v. Skipper, supra,* and the other implied preemption cases previously cited, we hold that state law comprehensively regulates the packaging, sale, and distribution of tobacco products, including cigars, and thus preempts this field.

The greatest number of state statutory provisions regulating "Other Tobacco Products" comprise Maryland Code (1992, 2010 Repl.Vol., 2012 Supp.), Title 16.5, §§ 16.5–101 through 16.5–218 of the Business Regulation Article.[5] "Other Tobacco Products" are defined in § 16.5–101(i) as "any cigar" or any other tobacco product, "other than a cigarette."

Sections 16.5–201 through 16.5–213 establish a detailed licensing scheme for a person or entity acting as an "other tobacco products manufacturer," an "other tobacco products retailer," an "other tobacco products storage warehouse," an "other tobacco products wholesaler," or a "tobacconist" in this State (§ 16.5–201(a)).[6] Sections 16.5–202 and 16.5–203 prescribe requirements for license applicants, such as maintaining established places of business, payment of license fees, and supplying other information required by regulations of the State Comptroller. Applicants for licenses as other tobacco products manufacturers, other tobacco products wholesalers, or to operate an other tobacco products storage warehouse, are required to submit their applications to the State Comptroller. Applicants for licenses as an other tobacco products retailer or a tobacconist are required to submit their applica-

---

5. Most of the provisions comprising Title 16.5 were enacted by Ch. 388 of the Acts of 2010. Other provisions were enacted by various statutes.

References in this opinion to sections of the Maryland Code shall be to the Business Regulation Article unless a different article is specified.

6. An "[o]ther tobacco products retailer" is defined in § 16.5–101(k) as a person who "sells other tobacco products to consumers . . . ." A tobacconist is defined in § 16.5–101(s) as "an other tobacco products business that derives at least 70% of its revenues . . . from the sale of other tobacco products and tobacco-related accessories."

tions to the clerk of the circuit court for the county in which the business is located.

Section 16.5–205 deals with the "scope" of the different licenses, particularly in relation to whether the state tobacco tax has been paid. *See* Maryland Code (1988, 2010 Repl.Vol., 2012 Supp.), §§ 12–101 through 12–302 of the Tax–General Article, imposing a state tobacco tax on tobacco products, including cigars, and detailing various requirements with regard to the tax. Section 16.5–205 of the Business Regulation Article also authorizes certain business operations, depending upon the type of license held by a particular business.

One subsection of § 16.5–205 is particularly significant. Subsection (a)(3) authorizes an "[o]ther tobacco products manufacturer" to distribute samples of "other tobacco products" to Maryland consumers "except as otherwise prohibited or restricted under local law, this article or the Criminal Law Article" (emphasis added). This is the only provision in Title 16.5 under which local law in the field is authorized. *See Talbot County v. Skipper, supra,* 329 Md. at 492, 620 A.2d at 885, where this Court stated:

> "In addition to the comprehensiveness of the state statutory provisions, there are other indications that the General Assembly generally intended to preempt the field of regulating sewage sludge utilization. In those circumstances where the General Assembly intended that local governments may act with regard to sewage sludge utilization, it expressly said so."

Sections 16.5–206 and 16.5–207 concern the terms and renewals of licenses and the assignment, transfer, and surrender of licenses. Sections 16.5–208 through 16.5–211 deal with grounds for disciplinary action against licensees by the State Comptroller, hearings before the Comptroller, suspension or revocation of licenses by the Comptroller, and judicial review of the Comptroller's decision. Section 16.5–212 relates to unlicensed persons engaging in the other tobacco products business and provides for criminal penalties.

Section 16.5–214 prescribes various duties of other tobacco products wholesalers and retailers, such as obtaining and keeping invoices, maintaining various records, making an inventory record each month, etc. Section 16.5–215 imposes certain duties on persons who transport other tobacco products over the State's public roads, and § 16.5–216 exempts certain unlicensed persons or entities from the requirements of the Title.

Section 16.5–217 also concerns the sale or distribution of other tobacco products. Subsection (b)(3) of that section is of particular importance in light of the facts of this case. It provides:

"(3) A licensed other tobacco products retailer or licensed tobacconist may deliver not more than two packages of other tobacco products directly to a consumer if the delivery is made by the licensed other tobacco products retailer or licensed tobacconist or an employee of the licensed other tobacco products retailer or licensed tobacconist."

Section 16.5–101(n) defines "[p]ackage" as follows (emphasis added):

"(n) *Package.*—(1) 'Package' means a pack, box, carton, can, wrap, pouch, bag, or container of any kind designed for retail consumption in which other tobacco products are offered for sale, sold, or otherwise distributed.

(2) 'Package' includes not more than *10 cigars offered for sale, sold, or distributed as single cigars.*"

The above-quoted provisions of Title 16.5 regulate the same subject matter as the two Prince George's County ordinances at issue, namely the required packaging of cigars for sale to consumers. The state law expressly authorizes a sale or distribution to a consumer of up to 20 single cigars. The Prince George's County ordinances, however, disallow the sale of single cigars unless the sale is for very expensive cigars or unless the seller derives 75% of its revenues from the sale of non-cigarette tobacco products. This tension between state law and local law reinforces the conclusion that state law regulating the packaging and sale of other tobacco products,

including cigars, preempts the local ordinances. In this connection, it is noteworthy that the General Assembly has considered bills prohibiting the sale of single cigars, but they have failed to pass. *See, e.g.,* House Bill 609 of the 2008 session and House Bill 238 of the 2009 session. The General Assembly's rejection of bills imposing the same requirements as the local legislation is significant in a preemption analysis. *Allied Vending v. Bowie, supra,* 332 Md. at 304, 631 A.2d at 89; *Talbot County v. Skipper, supra,* 329 Md. at 493, 620 A.2d at 886.

In addition to Title 16.5 of the Business Regulation Article, the petitioners have relied on earlier enacted state statutes concerning the taxation of tobacco products, the licensing of tobacco products, and regulations to promote public health. We need not decide whether state law prior to the enactment of Title 16.5 would have preempted the Prince George's County ordinances. It is clear that Title 16.5 comprehensively regulates the packaging, sale, and distribution of "other tobacco products," including cigars. Consequently, the two Prince George's County ordinances are preempted by state law and are invalid.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED AND THE CASE REMANDED TO THE CIRCUIT COURT FOR THE ENTRY OF A DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**