741 A.2d 1110

SOARING VISTA PROPERTIES, INC. et al.

v.

**BOARD OF COUNTY COMMISSIONERS
OF QUEEN ANNE'S COUNTY et al.**

**No. 87, Sept. Term, 1998.**

Court of Appeals of Maryland.

Dec. 8, 1999.

Warren K. Rich, Rich and Henderson, P.C., on brief, Annapolis, for petitioners.

Lynn McLain, University of Baltimore School of Law, Baltimore (Patrick Thompson, Foster, Braden & Thompson, Stevensville; George A. Weber, III, Law Offices of Peter Angelos, Baltimore), on brief, for respondent.

Baltimore County, County Commissioners of Carroll County, County Commissioners of Charles County, County Commissioners of Frederick County, Howard County, County Commissioners of Kent County, Montgomery County, Prince George's County, County Commissioners of Washington County, Wicomico County and Worcester County, amicus curiae.

J. Joseph Curran, Jr., Atty. Gen. of Maryland; J. Van Lear Dorsey, Asst. Atty. Gen., on brief, Baltimore, amicus curiae.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW *, RAKER, WILNER and CATHELL, JJ.

PER CURIAM.

Soaring Vista Properties, a wholly owned subsidiary of Wheelabrator Water Technologies, owns a 425.67–acre working farm in Queen Anne's County, known as Soaring Vista farm. Wheelabrator has fertilized the crops on this land with biosolids, or "sludge," since 1990. The treated sludge is transported to the farm from wastewater treatment plants owned by Wheelabrator throughout the State. Although the sludge is generated daily, in certain weather conditions it cannot be applied to the land. In order to ease its burden of sludge transportation and application, Wheelabrator proposed the construction of a sludge storage facility on its land in Queen Anne's County. The proposed facility consists of two 1.35 million gallon above-ground storage tanks.

In accordance with State law, Wheelabrator filed an application for a "Sewage Sludge Utilization Permit" with the Maryland Department of the Environment (MDE) on December 29,

---

* Chasanow, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

1994. See Maryland Code (1982, 1996 Repl.Vol.), § 9–231 of the Environment Article. After two public informational hearings, MDE in May 1996 issued a draft permit and its tentative determination to approve the storage facility. Thereafter, another public hearing was held, and the MDE on January 7, 1997, issued its final determination, to grant the permit. The actual permit was issued in June 1998.

During the time Wheelabrator was applying for the State permit, it filed an application for a conditional use permit with the Queen Anne's County Board of Appeals. According to §§ 4002 and 7203(c) of the Queen Anne's County's zoning ordinance, sludge storage was classified as an "industrial use" within the category of "Extraction and Disposal." Therefore, it was permitted as a conditional use in the agricultural district where the Soaring Vista farm was located. On July 2, 1996, however, the County enacted Ordinance No. 96–07 which placed a six-month moratorium on all sludge storage facilities in Queen Anne's County.

Soaring Vista and Wheelabrator (hereafter collectively referred to as "Soaring Vista") filed suit against the County, alleging that Code (1982, 1996 Repl.Vol.), §§ 9–230 through 9–249 of the Environment Article preempted the moratorium and preempted §§ 4002 and 7203(c) of the county zoning ordinances. The Circuit Court for Queen Anne's County granted summary judgment in favor of Soaring Vista, holding that both the moratorium and the ordinances were preempted by State law. The County appealed to the Court of Special Appeals which reversed. *Queen Anne's v. Soaring Vistas,* 121 Md.App. 140, 708 A.2d 1066 (1998).[1] Soaring Vista petitioned this Court for a writ of certiorari which we granted. *Soaring*

---

1. The County appealed only from the circuit court's decision relating to the County zoning ordinance requiring a conditional use permit, because at the time of the appeal both parties agreed that the issue concerning the six-month moratorium, which had expired on March 2, 1997, was moot. *See Queen Anne's v. Soaring Vistas,* 121 Md.App. 140, 144, 708 A.2d 1066, 1068 (1998). In addition, Soaring Vista withdrew its application for a conditional use permit pending the appellate process.

*Vistas v. Queen Anne's County,* 351 Md. 7, 715 A.2d 965 (1998).

The issue in this case is whether or not state law preempted the Queen Anne's County zoning ordinances requiring conditional use permits for the sewage sludge storage facilities. Consistent with our opinion in *Talbot County v. Skipper,* 329 Md. 481, 620 A.2d 880 (1993), we shall hold that, at the time Soaring Vista received its State permit, the State had preempted the field of sewage sludge utilization, which included storage facilities.

Because Soaring Vista's sludge utilization permit was issued before July 1, 1999, the applicable statutory provisions are those which were in effect prior to that time. *See* Code (1982, 1996 Repl.Vol.), §§ 9–230 through 9–249 of the Environment Article, which this Court reviewed extensively in *Talbot County v. Skipper, supra,* 329 Md. at 489–491, 620 A.2d at 884–885.[2] In *Skipper,* the Talbot County Code was amended to provide that a landowner could not apply sewage sludge to the land pursuant to a State utilization permit unless the State utilization permit was filed in the County's land records. Three Talbot County farmers and Bio–Gro Systems, Inc., the company hired by the farmers to apply sewage sludge to their land pursuant to their State permits, filed a complaint for declaratory and injunctive relief against the county. The farmers claimed, *inter alia,* that the State, in enacting §§ 9–230 through 9–249 of the Environment Article, had impliedly preempted the entire field of sewage sludge utilization. This Court agreed, holding that the General Assembly "intended to

---

**2.** Although §§ 9–243 and 9–244 of the Environment Article have been amended since this Court's opinion in *Talbot County v. Skipper,* 329 Md. 481, 620 A.2d 880 (1993), the amendments have no effect on the case at bar. Furthermore, the recent amendment to § 9–233 of the Environment Article, by Ch. 611 of the Acts of 1999, does not apply to permits issued prior to July 1, 1999. *See* Maryland Code (1982, 1996 Repl.Vol., 1999 Supp.), § 9–233 of the Environment Article; *Ad+Soil v. County Comm'rs,* 307 Md. 307, 332–333, 513 A.2d 893, 906 (1986) (refusing to apply amended statute in effect July 1, 1984, because the state permit was issued before that date).

preempt the field of regulating sewage sludge utilization."
*Skipper*, 329 Md. at 492, 620 A.2d at 885.

The Court of Special Appeals distinguished the present case
from *Skipper* on the ground, *inter alia*, that the present case
involves a sewage sludge storage facility and not the type of
activity involved in *Skipper*. Nevertheless, the holding in
*Skipper* was that the regulation of sewage sludge "utilization"
was preempted, and the statutory definition of "utilization"
includes storage as well as application. Section 9–201(t) of the
Environment Article provides that to " '[u]tilize sewage sludge'
means to collect, handle, burn, *store*, treat, or transport sew-
age sludge to or from a sewage sludge generator or utilizer in
this State, to apply it to land, or to dispose of it." (Emphasis
supplied). Accordingly, the holding in *Skipper* is as applicable
to a sewage sludge storage facility as it was to the application
of sewage sludge to the land.

The Court of Special Appeals in the case at bar also relied
heavily upon this Court's opinion in *Ad + Soil v. County
Comm'rs*, 307 Md. 307, 513 A.2d 893 (1986). In *Ad + Soil*,
however, this Court interpreted and applied the statutory
provisions as they existed prior to 1984 when presented with
facts similar to those in the case at bar. In that case,
Ad + Soil, Inc., a transporter and applicator of sewage sludge,
like Wheelabrator, was distributing sludge to farms in Queen
Anne's County. In order to accomplish this distribution,
Ad + Soil obtained a State permit from the Department of
Health and Mental Hygiene, as was then required pursuant to
§ 9–210(b) of the Health–Environment Article. This permit
allowed Ad + Soil to operate a "sludge transfer station" at its
facility in Queen Anne's County. After Ad + Soil's facility was
in operation, however, the County Commissioners of Queen
Anne's County amended the County zoning ordinances, mak-
ing the storage and distribution of sewage sludge a conditional
use in several districts, including the district where Ad + Soil's
facility was located. In this Court, Ad + Soil challenged the
authority of the County to regulate sewage sludge utilization,
arguing that the County's zoning laws were preempted by
State law. Because Ad + Soil's State permit was issued before

July 1, 1984, this Court applied the statute in effect prior to the pervasive 1984 amendments. As a result, we held that the General Assembly had not preempted the field of sewage sludge utilization, allowing the "enactment [and] enforcement of consistent local zoning laws." *Ad+Soil,* 307 Md. at 334, 513 A.2d at 907.

Nevertheless, as this Court made clear in *Skipper,* the present State statutory scheme is entirely different from and much more comprehensive than the limited State regulations involved in the *Ad+Soil* case. We held in *Skipper* as follows, 329 Md. at 491–492, 620 A.2d at 885:

> "When the present state statutory scheme is compared to the statute at issue in *Ad+Soil,* it is clear that the present state statutory scheme regulating sewage sludge addresses a multitude of additional issues, and is significantly more comprehensive and specific. The statute is 'extensive and embrace[s] virtually the entire area involved.' *National Asphalt v. Prince Geo's Co., supra,* 292 Md. [75] at 78, 43 [437] A.2d [651] at 653. This comprehensiveness is strongly indicative of the legislative intent to preempt this entire field from local regulation."

Since the statutory scheme applicable to the present case is the same as the statutory scheme involved in *Skipper,* and is entirely different from the limited statutory provisions involved in *Ad+Soil,* the Court of Special Appeals erred in applying *Ad+Soil,* rather than *Skipper,* to the present case.

This Court also pointed out in *Skipper* that, "[i]n those circumstances where the General Assembly intended that local governments may act with regard to sewage sludge utilization, it expressly said so." 329 Md. at 492, 620 A.2d at 885. We listed certain specific activities with regard to which the General Assembly had provided for local zoning control, and then pointed out (*ibid.*):

> "These provisions indicate that when the General Assembly intended to authorize local government involvement in sewage sludge utilization, it expressly provided for such involvement."

One of these provisions allowing local zoning control, to which we specifically referred in *Skipper*, and which was in effect at the time the State permit was issued in the present case, was § 9–233 which stated:

"**§ 9–233. Compliance with county requirements; approval of governing body.**

The Department may not issue a permit to install, materially alter, or materially extend a sewage sludge composting facility until:

(1) The sewage sludge composting facility meets all zoning and land use requirements of the county where the sewage sludge composting facility is to be located; and

(2) The Department has a written statement that the board of county commissioners or the county council of the county where the sewage sludge composting facility is to be located does not oppose the issuance of the permit."

All parties in the case at bar expressly acknowledge that the sewage sludge storage facility for which Soaring Vista has received a State permit does not constitute a "sewage sludge composting facility" within the meaning of § 9–233.

The approach of the General Assembly with respect to local involvement in sewage sludge utilization has remained the same. Instead of changing the general preemption holding of *Skipper* and broadly allowing local zoning ordinances to prevail, the General Assembly has continued to select specific aspects of sewage sludge utilization which can be subject to local zoning ordinances. Thus, by Ch. 611 of the Acts of 1999, effective July 1, 1999, the General Assembly amended § 9–233 and added "sewage sludge storage" facilities to "composting" facilities in subsection (1). Section 9–233, as amended by Ch. 611, now provides as follows:

"**§ 9–233. Compliance with county requirements; approval of governing body.**

The Department may not issue a permit to install, materially alter, or materially extend a sewage sludge composting facility or a sewage sludge storage facility until:

(1) The sewage sludge composting facility or sewage sludge storage facility meets all zoning and land use requirements of the county where the sewage sludge composting or storage facility is to be located; and

(2) In the case of a sewage sludge composting facility, the Department has a written statement that the board of county commissioners or the county council of the county where the sewage sludge composting facility is to be located does not oppose the issuance of the permit."

Interestingly, the additional local involvement provided for in subsection (2) is still limited to composting facilities. The title to Ch. 611 does not indicate that it was for the purpose of reiterating or clarifying existing law. Instead, Ch. 611 was clearly for the purpose of changing the law and allowing local zoning requirements to prevent the issuance of State permits for both sewage sludge composting and sewage sludge storage facilities from and after July 1, 1999. As previously mentioned, however, the State permit in the case at bar was issued long before Ch. 611 became effective.

The Circuit Court for Queen Anne's County correctly held that, at the time Soaring Vista's State permit was issued, its efficacy could not be controlled by the County's local zoning ordinances.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS.*