38 A.3d 524

EAST STAR, LLC, et al.

v.

The COUNTY COMMISSIONERS OF QUEEN ANNE'S COUNTY, Maryland.

No. 2616, Sept. Term, 2010.

Court of Special Appeals of Maryland.

March 1, 2012.

---

478

James J. Doyle, Annapolis, MD (Warren K. Rich, Rich and Henderson PC, Annapolis, MD, Megan B. Owings, David Bramble, Inc., Chestertown, MD), on the brief, for appellant.

Patrick E. Thompson (Foster, Braden & Thompson, LLP, on the brief), Stevensville, MD, for appellee.

Panel: ZARNOCH, WOODWARD, and RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.

ZARNOCH, J.

## STATEMENT OF THE CASE

This is another case in the long gray line of potential clashes between local zoning authority and State environmental laws. This appeal comes to us from the Circuit Court for Queen

Anne's County, which entered summary judgment in favor of appellee, the County Commissioners of Queen Anne's County (the "County"), and against appellants, East Star, LLC, Shore Sand and Gravel LLC, and David A. Bramble, Inc., (collectively "appellants"). Each appellant conducts sand and gravel excavation operations in Queen Anne's County and has brought a declaratory judgment action seeking to invalidate an ordinance imposing certain restrictions on their businesses. The circuit court ruled that the ordinance was not preempted by provisions of the State surface mining laws, set forth in Title 15 of the Environmental Article (Env.) of the Maryland Code (1982, 2007 Repl.Vol.), and did not violate any constitutional right to substantive due process. Appellants filed a timely notice of appeal.

## FACTUAL AND LEGAL PROCEEDINGS

On September 9, 2008, the Queen Anne's County Commissioners introduced County Ordinance 08–20 (the "Ordinance" or "CO 08–20") to amend the Queen Anne's County Zoning Ordinance, Chapter 18 of the Code of Queen Anne's County (2004), by adding a new Section 18:1–95E(9) dealing with "[m]ajor extraction operations."[1] After a mandated Planning Commission study and recommendation, including open meetings and a public comment period, a favorable recommendation with amendments was forwarded to the County Commissioners. After more hearings and amendments, the proposed legislation was adopted by the County Commissioners on April 29, 2009.

The 2009 Ordinance prohibits major extraction operations from exceeding 20 acres, other than by expansion in 20–acre increments. A major extraction operation may not exceed five years in duration, but may be renewed in additional five-year increments. In addition, the Ordinance requires that an expansion may not occur until the previously disturbed area is reclaimed. An expansion or renewal must be approved by the

---

1. Section 18:1–95E(1) of the Zoning Ordinance defines "[e]xtraction" to include, among other things, "sand, clay, shale, gravel, topsoil or similar extraction operations...."

Board of Appeals in Queen Anne's County as a conditional use.[2]

On February 22, 2010, appellants filed a complaint for declaratory and injunctive relief in the Circuit Court for Queen Anne's County against the County. In their complaint, appellants sought to have the circuit court declare CO 08–20 to be unlawful because its imposition of conditions on sand and gravel operations was impliedly preempted by State law. Appellants argued that because State law did not limit the acreage of mining operations, or their duration (up to 25 years), and did not require reclamation prior to proceeding with mining in other areas, the County had no authority to do so.[3]

They further asserted that regulatory provisions set forth in Chapter 8 of Title 15 of the Env. Article and Maryland Department of the Environment ("MDE") were meant to comprehensively control surface mining in Maryland. These provisions, they said, were meant to preempt local surface mining regulation because of the importance of surface mining to the State and the need to balance the industry's economic value against potential adverse effects to health, safety, and

---

**2.** The new Ordinance applied to all conditional use approvals after September 1, 2008, except any renewal or expansion of any extraction use legally existent prior to that date.

**3.** Specifically, the complaint noted:
MDE [Maryland Department of the Environment] statutes and regulations extensively deal with the authorization of mining projects. These regulations speak to the feasability, sizing and environmental aspects of a sand and gravel operation depending on soil type, depth of material, overburden requirements, sedimentation ponds, and other factors. State law does *not* contain a limit on the size of mining operations, and it does *not* require a total reclamation of one area before the operator may proceed into a secondary phase and another locations. Specifically, State law and regulations do not limit mining operations to twenty (20) acre parcels, and do not require total reclamation of disturbed areas before proceeding into another area of the mining site. In addition, reclamation requires revegetation. This takes years until completion. As a result, the County law would require the operator to stop for a period of time ranging from one (1) to two (2) years for restoration. (emphasis in original).

the environment. They argued that the enforcement of the County Ordinance has the effect of making the operation of a sand and gravel mine uneconomical and impossible to conduct, thereby preventing the operation of sand and gravel operations by the appellants of their properties in Queen Anne's County, contrary to the expressed intent and provisions of the Legislature. Thus, appellants contended, the Ordinance was preempted by conflict with State law. Appellants also argued that CO 08–20 violated their substantive due process rights by denying the exercise of a lawful business and the use of property without a valid public interest.

The County filed an answer and a motion for summary judgment, pointing out that the challenged Ordinance had, as its express purpose, "imposing additional standards on Major Extraction Operations in Queen Anne's County and clarifying the definition of 'Major Extraction and Dredge Disposal Use.'" It argued that the relevant provisions in the Env. Article complement, rather than preempt, the Ordinance at issue and that the restrictions set forth in the Ordinance are "of the same kind as normally and historically made with respect to land use by local government." Appellants responded by filing an opposition and a cross-motion for summary judgment.

Following a November 30, 2010 hearing, the circuit court issued a Memorandum and Order dated December 20, 2010, granting the County's motion for summary judgment. The court concluded that: (1) "The restrictions of [CO] 08–20 are proper zoning conditions that are historically and appropriately within the province of the County and are not . . . issues of permitting or licensing that have been preempted by the State"; and, (2) "There has been no violation of substantive due process by virtue of the enactment of [CO] 08–20." Although a separate order noted the disposition of the summary judgment motions, no declaratory judgment was issued by the circuit court.[4] Appellants filed a timely notice of appeal.

---

4. Thus, as part of our mandate we are directing the circuit court on remand to enter a declaratory judgment consistent with this opinion. *See Conaway v. Deane*, 401 Md. 219, 325, 932 A.2d 571 (2007).

## QUESTIONS PRESENTED

Appellants raise three questions for our consideration:

1. Has County Ordinance 08–20 ... been preempted by implication by the Annotated Code of Maryland Environment Article, Title 15, Subtitle 8, and COMAR 26, Subtitle 21?

2. Has County Ordinance 08–20 ... been preempted by conflict by the provisions of the Annotated Code of Maryland Environment Article, Title 15, Subtitle 8, and COMAR 26, Subtitle 21?

3. Does County Ordinance 08–20 ... violate the substantive due process rights of the Appellants because it is not a valid exercise of the County's police powers and denies the exercise of lawful business and the use of private property without a valid public interest?

For the following reasons, we hold that CO 08–20 has been preempted by State law, and we reverse the ruling of the circuit court.

## DISCUSSION

### I. Standard of Review

"The standard for appellate review of a trial court's grant of a motion for summary judgment is whether the court was legally correct." *Hrehorovich v. Harbor Hosp. Ctr., Inc.*, 93 Md.App. 772, 789, 614 A.2d 1021 (1992). Summary judgment is proper "only where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Id.; see also* Md. Rule 2–501. In reviewing the appropriateness of a grant of summary judgment, we will ordinarily only consider the grounds relied on by the trial court. *Bell v. Heitkamp Inc.*, 126 Md.App. 211, 222, 728 A.2d 743 (1999).

### II. Preemption by State Law

#### A. Preemption in General

Preemption of local law by state law can be express or implied or can occur when local law conflicts with State law.

*Talbot County v. Skipper,* 329 Md. 481, 487–88, 620 A.2d 880 (1993).[5] Express preemption occurs when the General Assembly, by statutory language, prohibits local legislation in a field. *Ad + Soil, Inc. v. County Comm'rs.,* 307 Md. 307, 324, 513 A.2d 893 (1986). Preemption by implication occurs when a local law "deals with an area in which the [General Assembly] has acted with such force that an intent by the State to occupy the entire field must be implied." *Skipper,* 329 Md. at 488, 620 A.2d 880. Conflict preemption occurs "when [a local law] prohibits activity which is intended to be permitted by state law, or permits an activity which is intended to be prohibited by state law." *Skipper, Id.* at 487, n. 4, 620 A.2d 880.[6] Appellants have not argued that CO 08–20 is expressly preempted. However, they do contend that the Ordinance is impliedly preempted and is inconsistent with State law.

### B. Preemption by Implication

Contending that State law so comprehensively regulates surface mining, appellants argue that the conditions CO 08–20 places on the size, area, duration of surface mining operations,

---

**5.** *In Swift & Co. v. Wickham,* 382 U.S. 111, 120, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965), the United States Supreme Court noted that a federal-state preemption issue is not a constitutional question, but "inevitably one of comparing two statutes." Under federal preemption analysis, a presumption against preemption is accorded both state statutes and local ordinances. *See Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 713–15, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). Maryland case law has not expressly mentioned a presumption against State preemption of local ordinances. However, when challenged on constitutional grounds, a county or municipal ordinance, including a local zoning law, is presumed valid. *Gino's of Maryland, Inc. v. Baltimore,* 250 Md. 621, 636, 244 A.2d 218 (1968); *Walker v. Board of County Comm'rs,* 208 Md. 72, 93, 116 A.2d 393 (1955).

**6.** Under federal preemption analysis, when a State law conflict is found, the State statute is not completely ousted, but is preempted only to the extent necessary to achieve the aim of the federal statute. *DeCanas v. Bica,* 424 U.S. 351, 357–58, n. 5, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976). Undoubtedly, a similar result would occur in the case of a conflict between State law and a local ordinance.

and timing of reclamation are preempted by implication.[7] In response, the County asserts that State law recognizes the concurrent authority of local government with respect to surface mining, thereby acknowledging the preeminence of County regulation.

In deciding whether there has been preemption by implication, our inquiry is focused on "whether the General Assembly has manifested a purpose to occupy exclusively a particular field." *Ad + Soil*, 307 Md. at 324, 513 A.2d 893. The comprehensiveness with which the Legislature has spoken is the primary indicator of implied preemption. *Allied Vending, Inc. v. Bowie*, 332 Md. 279, 299, 631 A.2d 77 (1993). Among the secondary factors considered by a court are:

> 1) whether local laws existed prior to the enactment of the state laws governing the same subject matter, 2) whether the state laws provide for pervasive administrative regulation, 3) whether the local ordinance regulates an area in which some local control has traditionally been allowed, 4) whether the state law expressly provides concurrent legislative authority to local jurisdictions or requires compliance with local ordinances, 5) whether a state agency responsible for administering and enforcing the state law has recognized local authority to act in the field, 6) whether the particular aspect of the field sought to be regulated by the local government has been addressed by the state legislation, and 7) whether a two-tiered regulatory process existing if local laws were not preempted would engender chaos and confusion.

*Id.* at 299–300, 631 A.2d 77 (citations omitted).

## C. Relevant Case Law

In a number of similar environmental areas, Maryland caselaw is divided on whether State law has indicated an intent on the part of the General Assembly to occupy the particular field and preempt by implication the authority of a

---

7. See pp. 489–91, 38 A.3d at 530–32 *infra* for a detailed description of State surface mining regulations.

local jurisdiction to control that area through its zoning or regulatory powers. In *Days Cove Reclamation Co. v. Queen Anne's County*, 146 Md.App. 469, 807 A.2d 156 (2002), notwithstanding Env. Article § 9–210(a)(3), which prohibits MDE from issuing a permit for rubble landfills unless the county provides a "written statement that the refuse disposal system . . . [m]eets all applicable county zoning and land use requirements; and . . . [i]s in conformity with the county solid waste plan," we concluded that the extensive State regulation in the landfill permitting process prohibited the county from acting in areas outside its traditional zoning and land use decisions. *Id.* at 503, 807 A.2d 156 (noting that the risk that pollutants will produce adverse effects offsite is within MDE's exclusive evaluation in the permit process; but whether surface runoff or stormwater maintenance basin discharge will cause thermal pollution is within local zoning power because the pollution is "common to many types of land uses").

In *Skipper,* the Court of Appeals examined MDE's authority under Env. Article §§ 9–230 *et seq.* to regulate sewage sludge management through the issuance of permits, and concluded that the county lacked substantial power to control sewage sludge utilization. *See* 329 Md. at 489, 620 A.2d 880. That case involved a Talbot County ordinance which prohibited the application of sewage sludge until the landowner's utilization permit from the State had been filed in the local land records. *Id.* at 485, 620 A.2d 880. *Skipper* concluded that the State regulatory scheme relating to sewage sludge addressed a multitude of issues, was comprehensive and specific, and "manifest[ed] the general legislative purpose to create an all-encompassing state scheme" of regulation. *Id.* at 491, 620 A.2d 880. Therefore, although Env. Article § 9–233 addressed local authority to legislate regarding zoning and land use, required sewage sludge composting facilities to meet all county zoning requirements and directed MDE to obtain a written statement from that county that it did not oppose issuance of a permit, the local ordinance was held to be preempted by implication. *Id.* at 489, 620 A.2d 880.

*Mayor & City Council of Baltimore v. New Pulaski Co.
Ltd. Partn.*, 112 Md.App. 218, 684 A.2d 888 (1996) involved a
challenge to an ordinance that placed a moratorium on new
incinerators in Baltimore City. This Court concluded that
Subtitles 2 and 5 of Title 10 of the Env. Article which governs
the state licensing and regulation of solid waste management
plans "indicate[s] an intent of the General Assembly compre-
hensively to occupy the field of solid waste management." *Id.*
at 231, 684 A.2d 888. The moratorium was invalid because it
stripped the State of "its exclusive authority over county plans
and the relevant permitting process." *Id.* We also held that
"a ban on incinerators is not a traditional area of regulation
controlled by local government, except for legitimate zoning
and planning reasons." *Id.*

In contrast, in *Md. Reclamation Assocs. v. Harford County*,
414 Md. 1, 994 A.2d 842 (2010), the Court of Appeals declined
to find preemption. There, the Court considered whether
State law preempted a county ordinance which required, *inter
alia*, that rubble landfills be built on sites of at least 100 acres.
Such a limitation, the Court said, was "less restrictive than a
categorical ban." *Id.* at 44, 994 A.2d 842. The Court conclud-
ed that the ordinance was enacted to address "the impact of
the use on neighboring properties due to emissions from [a
rubble landfill] site, increase in noise, increase in traffic,
danger to children, impairment of landscape and visual con-
cerns" which are "classic zoning considerations." *Id.* at 40,
994 A.2d 842. Because zoning is within the province of local
government and because State environmental laws recognized
that county zoning laws may limit a property owner's ability to
utilize a MDE permit, the ordinance was found not to be
preempted. *Id.* at 40–42, 994 A.2d 842.

Finally, in *Ad + Soil*, the Court of Appeals rejected a
preemption challenge to a local law because State environ-
mental laws made references to the concurrent legislative au-
thority of local jurisdictions, required counties to adopt com-
prehensive management plans "consistent with all local zoning
regulations," and specifically stated that "[a]ny rule or regula-
tion [of MDE] adopted under this subtitle does not limit or

supersede any other county, municipal, or State law, rule, or regulation that provides greater protection to the public health, safety, or welfare." 307 Md. at 326–27, 513 A.2d 893. The Court held that, though the General Assembly had enacted "extensive"[8] statewide legislation regarding sewage management, the express language of the statute manifested a policy of "fostering local control under state supervision," and did not prohibit the local enactment of laws on the subject. *Id.* at 326, 513 A.2d 893.

### D. State Surface Mining Regulation

The General Assembly, in Title 15, Subtitle 8 of the Env. Article, has enacted a very elaborate scheme regulating virtually all aspects of surface mining in Maryland. Specifically, Env. Article § 15–802(b) directs MDE to adopt a program and implement regulations related to surface mining:

[F]or the general welfare of the people of the State, by providing for the protection and conservation of the natural resources of the State and the reclamation of areas of land affected in the surface mining of metallic and nonmetallic minerals other than coal, to aid in the protection of birds and wildlife, to decrease soil erosion, to prevent pollution of rivers, streams, and lakes, to prevent loss or waste of valuable mineral resources, to prevent and eliminate hazards to health and safety, to provide for reclamation of mined areas so as to assure the use of these lands for productive purposes, and generally to provide for the continued use and enjoyment of these lands.

*Id.* The articulated purpose of the statute is to balance the "important contribution" of the "extraction of minerals ... to the economic well-being of the state and the nation" against "potential health, safety, and environmental effects." § 15–

---

**8.** The Court of Appeals later described the State sewerage sludge legislation in effect at the time of *Ad + Soil* as "limited." *Soaring Vista Properties, Inc. v. Board of County Commissioners of Queen Anne's County,* 356 Md. 660, 663, 741 A.2d 1110 (1999). In *Soaring Vista,* the Court held preempted a local ordinance requiring a conditional use permit for a sludge storage facility.

802(a)(1). Pursuant to § 15–803(a)–(b), MDE "may adopt regulations as are reasonably necessary" to effectuate the legislative intent, and, "in adopting [those] regulations . . . [,] shall recognize the basic and essential resource utilization aspect of the surface mining industry and the importance of the industry to the economic well-being of the State."

Sections 15–807 and 15–808 establish a license and permit requirement, respectively, and § 15–810 specifies under what conditions MDE may deny a permit.[9] In § 15–810(a), the General Assembly specifically addresses local authority regarding zoning and land use ("[MDE] shall process the permit application concurrently with any local or county land use and zoning reviews"), and in subsection (c), directed MDE to obtain from the county government a written statement that the proposed land use conforms with all applicable county zoning and land use requirements.[10]

Notice of permit applications is provided in § 15–809. MDE is mandated by § 15–810 to issue a permit to an applicant who meets the requirements of the subtitle, and under § 15–811, a permit holder is authorized to engage in surface mining according to the terms of the permit, including any other "reasonable and appropriate requirements and safeguards deemed necessary" by MDE.[11]

---

**9.** Specifically, [MDE] may deny the permit on finding that the operation will have an unduly adverse effect on wildlife or freshwater, estuarine or marine fisheries; where the applicant fails to provide applicable permits or approvals from all State and local regulatory agencies responsible for pollution, sediment control, and zoning; where the operation will constitute a substantial physical hazard to a neighboring dwelling house, school, church, hospital, commercial or industrial building, public road, or other public or private property in existence at the time of the application; where the operation will have a significant adverse effect on the uses of publicly owned park, forest or recreation area, or where there is a substantial probability that the operation will result in substantial deposits of sediment in stream beds or lakes, landslides, or other water pollution. § 15–810(b).

**10.** COMAR 26.21.01.04M imposes a similar requirement.

**11.** This includes a "requirement of visual screening, vegetative or otherwise, to screen the view of the operation from public highways,

Particulars concerning the term and renewal of a permit are set forth in § 15–814 through § 15–818. Section 15–814 states: "a surface mining permit shall be granted for such period as requested and deemed reasonable, but not exceeding 25 years." Section 15–822 specifies the contents of the reclamation plan, and § 15–823 dictates that the permit holder must maintain a performance bond or other type of security.

Furthermore, MDE has also adopted regulations set forth in COMAR 26.21.01.00 *et seq.* that also govern surface mining. Subsection .27 concerns the standards for reclamation. Subsection .16 requires reclamation activities to begin "as soon as practicable after mining starts, continuing concurrently with mineral extraction and, upon termination of mining, until the entire permit area is reclaimed" and mandates further that reclamation be successfully completed within 2 years after mineral extraction. Moreover, subsection .04 delineates the procedure by which MDE will review the application for a surface mining permit. Subsection .04F also addresses the area of disturbance and provides specifically that "[MDE] shall determine the area of maximum disturbance," according to several factors.[12]

---

public parks, or residential areas existing at the time of the original application, if [MDE] finds screening to be feasible and desirable." Env. § 15–811(a).

12. Specifically, pursuant to COMAR 26.21.01.04F:

The Department [MDE] shall determine the maximum disturbance, in part, based upon the following factors:

A. Type of mineral to be excavated,
B. Location of mineral to be excavated,
C. Depth of material to be excavated,
D. Potential impacts upon the environment and public safety,
E. Estimated annual production,
F. Proposed mining method,
G. Proposed date of termination of mining,
H. Proposed reclamation method,
I. Size and location of stockpiled areas,
J. Size and location of hall roads,
K. Size and location of erosion and sediment controls, and
L. Size and location of storage areas.

### E. Analysis

Here, the County Ordinance at issue restricts the maximum disturbance area, limits the length of time of a surface mining operation, and requires that the previously disturbed area be reclaimed before any expansion of mining acreage. As our review of Title 15, Subtitle 8 and COMAR regulations make clear, the *Allied Vending* factors cut in favor of preemption. State law in this area existed before the Ordinance was enacted; the general law addressed the particular aspect the local law seeks to control; and the Ordinance seeks to regulate the time of major extraction operations, an area of local control which has not "traditionally been allowed." 332 Md. at 299, 631 A.2d 77. The Queen Anne's County legislation also requires conditional use approval of an expansion or renewal permitted under State law. *See Soaring Vista,* 356 Md. at 663, 741 A.2d 1110.

We find no merit in the County's argument that, by virtue of requiring MDE to process surface mining applications "concurrently with any local or county, land use and zoning reviews," (specifically § 15–810(a) and COMAR § 26.21.01.04(M)), the Legislature recognized the authority of local governments to adopt surface mining regulations of the type at issue here. In *Days Cove* and *Skipper,* the Court discussed statutes that similarly addressed local authority to legislate in areas of zoning and land use, but nonetheless found preemption because the State law was, as it is here, extensive, specific, and all-encompassing. *See Days Cove,* 146 Md.App. at 501, 807 A.2d 156; *Skipper,* 329 Md. at 489, 620 A.2d 880.[13]

---

**13.** Appellee, like the circuit court, has sought to justify CO 08–20 as a traditional zoning measure. Even if the Ordinance were an exercise of the police power, it would fare no better under a preemption analysis. Because it matters not whether the Ordinance is a police power regulation, we need not address the impact of Md.Code (1957, 2011 Repl.Vol.) Art. 25B, § 13, which authorizes a Code Home Rule county such as Queen Anne's to exercise the express powers of Charter Home Rule counties, except in certain areas, one of which is the police power. *See generally* 62 OAG 275 (1977). Both Art. 25A § 13 and Md.Code (1957, 2003 Repl.Vol.) Art. 66B, § 4.01 confer zoning authority on Code

Although the County relies on *Md. Reclamation,* we find it inapposite. There, the Court of Appeals concluded that the General Assembly in State environmental legislation preserved the right of local governments to legislate and enforce zoning regulations. 414 Md. at 40–43, 994 A.2d 842. Contrary to that case, the restrictions here, particularly the severe reclamation requirements, are, for the most part, not traditional areas of regulation controlled by local government. Thus, unlike the local law in *Md. Reclamation,* CO 08–20 impermissibly seeks to impose the types of requirements on surface mining that go beyond classic zoning considerations and are entrusted by State law to the MDE. *See Md.Reclamaition,* 414 Md. at 40, 994 A.3d 842.

In short, we hold that State law has provided a detailed and elaborate regulatory program for surface mining and manifests the general legislative purpose to create an all-encompassing scheme governing the areas Queen Anne's County seeks to control through CO 08–20. By addressing the maximum disturbance for surface mines, the time periods for mining activities, the reclamation process and conditional use approval of renewal or expansion, the County has acted beyond its zoning powers and impermissibly entered the realm of a State law that impliedly preempts its authority.

### F. Preemption by Conflict

 Even if CO 08–20 were not impliedly preempted, we would agree with appellants' second contention that the Ordinance conflicts with State law regarding mining operations and the process of reclamation. As noted above, a local ordinance is preempted by conflict when it prohibits an activity which is intended to be permitted by state law, or permits an activity which is intended to be prohibited by state law. *See Skipper,* 329 Md. at 487 n. 4, 620 A.2d 880.

---

Home Rule counties. *See Kent Island Def. League, LLC v. Queen Anne's County Bd. of Elections,* 145 Md.App. 684, 689, 806 A.2d 341 (2002).

Portions of CO 08–20 conflict with Env. Article § 15–801 *et seq.* The Ordinance provides that the maximum area disturbed by any major extraction may not exceed 20 acres at any time. This directly conflicts with 26.20.01.04F, which specifically provides that MDE shall determine the area of maximum disturbance after considering various factors. Moreover, CO 08–20 requires that any previously disturbed area be reclaimed before any expansion of mining acreage. This mandate is incompatible with Env. Article § 15–822(d), which only requires reclamation activities to be completed promptly and "not later than two years after completion on each segment of the area . . . unless [MDE] specifically permits a longer period." *See also* COMAR 26.21.01.16.

Finally, CO 08–20 contradicts the authority of MDE by limiting the term of the permit to five years, with renewals allowed only in increments of five years if conditional use approval is granted. In comparison, Env. Article § 15–814 provides that "a surface mining permit shall be granted for such period as requested and deemed reasonable, but not exceeding twenty-five years."

Thus, CO 08–20 is in direct conflict with the key provisions in the Env. Article, as it places additional and incompatible restrictions on the surface mining operations than those imposed by State law. Here, the Ordinance limits and restricts an activity which the General Assembly expressly intended to permit. Therefore, we also reverse the ruling of the circuit court on this basis.[14]

**JUDGMENT OF THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY REVERSED. CASE REMANDED**

---

**14.** Because we reverse on these grounds, we need not reach appellants' final contention that CO 08–20 violates their substantive due rights. We note, however, that our review of legislative action by a local government is "limited to assessing whether [the government body] was acting within its legal boundaries." *County Council v. Offen*, 334 Md. 499, 507, 639 A.2d 1070 (1994). We will not strike down a legislative act unless the exercise of power is shown to be "arbitrary, oppressive or unreasonable." *Governor of Md. v. Exxon Corp.*, 279 Md. 410, 370 A.2d 1102 (1997), *aff'd*, 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978).

WITH DIRECTIONS TO ISSUE A DECLARATORY JUDGMENT DECLARING INVALID THE LOCAL LAW PROVISIONS AT ISSUE. COSTS TO BE PAID BY APPELLEE.