*Board of County Commissioners of Washington County, et al. v. Perennial Solar, LLC*, No. 1022, September Term 2016.


**MUNICIPAL CORPORATIONS > LOCAL LEGISLATION**

If the General Assembly has preempted a certain field, municipalities have no authority to legislate in that field.

**MUNICIPAL CORPORATIONS > RELATION TO STATE**
**MUNICIPAL CORPORATION > CONCURRENT AND CONFLICTING EXERCISE OF POWER BY STATE AND MUNICIPALITY**

Local governing bodies are impliedly preempted from regulating the location and/or construction of generating stations that require a Certificate of Public Convenience and Necessity ("CPCN") by broad legislative grant of power to the Public Service Commission. PUA §7-207.

**PUBLIC UTILITIES > PUBLIC SERVICE COMMISSIONS OR BOARDS > JUDICIAL REVIEW OR INTERVENTION**

The Public Service Commission is not limited to authorizing CPCNs to electric companies under PUA §7-207(b)(1)(i). Instead, any "person" may apply for a CPCN to construct a generating station. The Public Service Commission's denial of a CPCN application does not diminish the Commission's jurisdiction.

Circuit Court for Washington County
Case No. 21-C-15-055848

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1022

September Term, 2016

_____

BOARD OF COUNTY COMMISSIONERS
OF WASHINGTON COUNTY, et al.

v.

PERENNIAL SOLAR, LLC

_____

Berger,
Reed,
Salmon, James P.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Reed, J.

_____

Filed:  November 15, 2018

 Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document ° authentic.



Suzanne C. Johnson, Acting Clerk

Appellee, Perennial Solar, LLC ("Perennial"), filed an application for a special exception and variance to construct a solar panel farm in Washington County, Maryland. On November 4, 2015, the Washington County Board of Zoning Appeals ("the Board") granted the application. Appellants, the Board of County Commissioners of Washington County and several aggrieved residents, appealed the decision to the Circuit Court for Washington County. On a preliminary motion filed by Perennial, the court determined that the authority of the Board of Zoning Appeals and the circuit court to consider the application for special exception is preempted by state law. The court dismissed the appeal with instruction that the Board of Zoning Appeals vacate its decision. Appellants challenge the state law preemption finding and present three questions for our review, which we have consolidated into two and rephrased:

I.  Did the circuit court err in ruling that state law preempts local zoning authority, with respect to the solar energy generating facility, proposed in this matter?

II. Whether Perennial Solar is a "public service company" and therefore subject to regulation by state law.

For the reasons that follow, we affirm the decision of the circuit court.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 17, 2015, Perennial filed an application for special exception and variance with the Board of Zoning Appeals to construct and operate a Solar Energy

Generating System ("SEGS")[1] in Cearfoss, Maryland, on around eighty-six acres of land. According to the Washington County Zoning Ordinance,[2] the proposed site is located in an Agricultural (Rural) zoning district. The County permits a SEGS in this district but only by a special exception. The SEGS is designed to produce ten megawatts of electricity to be sold and transferred offsite to the wholesale electricity market. The electricity generated would be sufficient to power over two thousand homes.

A hearing was held before the Board of Zoning Appeals ("the Board") on October 21, 2015. Multiple witnesses testified both in favor and in opposition of granting the special exception. After considering the matter for two weeks, the Board granted the request for special exception and variance on November 4, 2015.[3] As required by Maryland statute, Perennial then applied for a Certificate of Public Convenience and Necessity ("CPCN") permit in order to construct the SEGS.[4] Neighboring landowners appealed the decision to the Circuit Court for Washington County.

---

[1] A SEGS is a grid-tie solar facility consisting of multiple solar arrays whose primary purpose is to generate electricity for distribution and/or sale into the public utility grid and not for onsite consumption. Washington County Zoning Ordinance Article 28A.

[2] Under Article 5A of the Washington County Zoning Ordinance, Agricultural (Rural) zoning districts are intended "to provide for continued farming activity and the many uses that do not require public water and sewage facilities and which may be more suitably located outside of the urban-type growth of the larger communities of the County."

[3] The Board of Zoning Appeals granted the request for special exception by a vote of 3-1, and granted the request for variance by a vote of 4-0.

[4] Public Utilities Article §7-207(b)(1)(i) states that a party may not begin construction on a generating station unless that party obtains a CPCN from the Maryland Public Service Commission. Perennial applied for the CPCN on November 23, 2015, and the application is pending.

Before the hearing, Perennial filed a Motion for Pre-Appeal Determination alerting the court to an issue of subject matter jurisdiction. In short, Perennial argued that the Maryland Public Services Commission ("PSC"), and its law codified in the Public Utilities Article of the Maryland Code, has exclusive jurisdiction for approving the SEGS proposed by Perennial, including site location approval. Perennial requested that the appeal be dismissed. Appellants opposed the motion, arguing that legislative intent reveals that local regulation of SEGS – particularly their location – is not preempted by state law. After a hearing, the circuit court agreed with Perennial and granted the motion. The court determined that Public Utilities Article ("PUA") §7-207 preempts the Washington County Zoning Ordinance and that the PSC has exclusive jurisdiction to approve the type of SEGS proposed by Perennial. This appeal followed.

## DISCUSSION

### A. Parties' Contentions

Appellants argue that PSC approval of the SEGS at the proposed location would be inconsistent with the local planning and zoning controls of the Washington County Zoning Ordinance. The conflict, Appellants continue, should be resolved in favor of local government. Appellants attempt to distinguish this case from *Howard County v. Potomac Electric Power Co.*, 319 Md. 511 (1990), where the Court of Appeals held that local governing bodies are impliedly preempted from regulating construction of certain electric power lines. Appellants argue that, unlike with power lines, the location of SEGS does not present a sufficiently compelling public interest, and the Public Utilities Article laws do

3

not occupy the entire field of SEGS. Appellants also assert that the PSC has jurisdiction only to regulate public service companies, which does not include Perennial.

Perennial counters arguing, "[f]or the type of solar energy generating system proposed in this matter, the statutory law and case law are clear that the authority to determine whether and where the SEGS may be built and operated rests solely within the purview of the PSC." Perennial relies on *Howard County*, discussed below, to support its argument that jurisdiction of its application for special exception lies solely with the PSC, not the local government. Perennial also maintains that the PSC laws "concerning generating systems are not limited to electric companies or public service companies."

## B. Standard of Review

This case presents questions of both preemption and jurisdiction. Both are questions of law to be determined by this Court *de novo*. *See County Comm'rs of Kent County v. Claggett*, 152 Md. App. 70, 91 (2003) ("In this case, the appellants do not challenge the court's factual findings. They challenge the court's legal finding of preemption based on those factual findings. Accordingly, our standard of review is *de novo*.").

## C. Analysis

### 1. Preemption by Implication

The question we aim to answer is whether PUA §7-207, which grants the PSC general regulatory powers over generating stations, including SEGS, preempts local zoning regulation regarding the location and construction of such generating stations. "Preemption of local law by state law can be express or implied or can occur when local law conflicts

4

with State law."[5] *East Star, LLC v. County Comm'rs of Queen Anne's County*, 203 Md. App. 477, 485 (2012). Relevant to this case, preemption by implication occurs when a local law "deals with an area in which the [General Assembly] has acted with such force that an intent by the State to occupy the entire field must be implied." *Talbot County v. Skipper,* 329 Md. 481, 488 (1993). Therefore, our inquiry is focused on "whether the General Assembly has manifested a purpose to occupy exclusively a particular field." *East Star*, 203 Md. App. at 486. If we render a holding in favor of preemption, that means local legislative bodies are prohibited from enacting any legislation in the field that is preempted. *See Ad + Soil v. County Comm'rs of Queen Anne's County,* 307 Md. 307 (1985).

Although there is no specific formula to determine whether the General Assembly intended to preempt an entire area, Maryland courts have considered the following secondary factors relevant to whether a local law is preempted by implication:

> 1) whether local laws existed prior to the enactment of the state laws governing the same subject, 2) whether the state laws provide for pervasive administrative regulation, 3) whether the local ordinance regulates an area in which some local control has traditionally been allowed, 4) whether the state law expressly provides concurrent legislative authority to local jurisdictions or requires compliance with local ordinances, 5) whether a state agency responsible for administering and enforcing the state law has recognized local authority to act in the field, 6) whether the particular aspect of the field sought to be regulated by the local government has been addressed by

---

[5] Express preemption occurs when the General Assembly, by statutory language, prohibits local legislation in a field. *Ad + Soil, Inc. v. County Comm'rs,* 307 Md. 307, 324 (1986). Conflict preemption occurs "when [a local law] prohibits activity which is intended to be permitted by state law, or permits an activity which is intended to be prohibited by state law." *Skipper*, 329 Md. at 487, n. 4. The parties here argue only implied preemption; therefore, we do not address express or conflict preemption.

the state legislation, and 7) whether a two-tiered regulatory process existing if local laws were not preempted would engender chaos and confusion.

*Allied Vending, Inc. v. Bowie,* 332 Md. 279, 299-300 (1993) (citations omitted). Nevertheless, the comprehensiveness with which the Legislature has spoken about the issue is the primary indicator of implied preemption. *Id. See also*, *Skipper*, 329 Md. at 492 (*quoting Howard County, supra*) ("[t]he primary indicia of a legislative purpose to preempt an entire field of law is the comprehensiveness with which the General Assembly has legislated in the field."). In light of the comprehensiveness of PUA §7-207, we hold that state law impliedly preempts local zoning regulation of SEGS that require a CPCN. We explain.

In regard to generating stations, PUA §7-207 "defines the nature and extent of the PSC's regulatory powers and responsibilities." *Howard County v. Potomac Electric Power Co.*, 319 Md. 511, 518 (1990). Specifically, it details the application process required to construct a generating station in Maryland. According to PUA §7-207(b)(1)(i), a person may not begin construction of a generating station "[u]nless a certificate of public convenience and necessity for the construction is first obtained from the [PSC.]"

Two sections, §§7-207.1 and 7-207.2, provide exemptions from the general §7-207 application process for certain types of generating systems. §7-207.1 allows an exemption for generating systems that: (i) are constructed to produce less than 70 megawatts, with electricity produced onsite sold only on the wholesale market to the local electric company; (ii) are wind-based or (iii) are constructed to produce less than 25 megawatts and use at least 10% of the electricity produced onsite. Projects falling under §7-207.1 are still

6

required to get PSC approval, but a CPCN is not issued. §7-207.2 allows an exemption from the CPCN requirement for a generating station that produces at least 2 megawatts of power and is exempt from the CPCN permit by §7-207.1. If the exemptions of §§7-207.1 or 7-207.2 do not apply, any person attempting to construct a generating system must apply for and receive a CPCN permit pursuant to §7-207(b)(1)(i). Although Perennial meets the threshold for an exemption under §7-207.2, it doesn't satisfy the requirements of §7-207.1 because the proposed SEGS would produce less than 25 megawatts but none of the electricity will be used onsite. *See* §7-207.1(a)(2). If the project had qualified for a CPCN exemption, Perennial would need to obtain the Commission's approval, *see* §§7-207.1(b) and 7-207.2(b), along with any approvals or permits required by other State and local government agencies.

Once the application is submitted, the PSC is required to provide notice to interested parties, including "the governing body of each county or municipal corporation in which any portion of the generating station . . . is proposed to be constructed[.]" PUA §7-2-7(c)(1)(ii). Additionally, the "Department of Planning shall forward the application to each appropriate State unit and unit of local government for review, evaluation, and comment regarding the significance of the proposal to State, area-wide, and local plans or programs." PUA §7-207(c)(2).

The PSC must also "provide an opportunity for public comment and hold a public hearing" on the CPCN application. *See* PUA §7-207(d)(1). Lastly, before taking final action on an application for a CPCN, the PSC must give "due consideration" to the following:

(1) the recommendation of the governing body of each county or municipal corporation in which any portion of the construction of the generating station, overhead transmission line, or qualified generator lead line is proposed to be located; and

(2) the effect of the generating station, overhead transmission line, or qualified generator lead line on:

 (i)  the stability and reliability of the electric system;
 (ii)  economics;
 (iii)  esthetics;
 (iv)  historic sites;
 (v)  aviation safety as determined by the Maryland Aviation Administration and the administrator of the Federal Aviation Administration;
 (vi)  when applicable, air and water pollution; and
 (vii)  the availability of means for the required timely disposal of wastes produced by any generating station.

§7-207(e).

On the other hand, Washington County's Zoning Ordinance and Comprehensive Plan, to which Appellants cite, are much less thorough regarding the construction of generating stations. Washington County's comprehensive plan promotes the preservation of agricultural uses adjacent to rural villages such as Cearfoss (the SEGS proposed location). With respect to areas adjacent to rural villages, the comprehensive plan recommends, *inter alia*, that the County:

> Require development on the edge of a Rural Village to be designed to extend the fabric of the existing development and [e]nsure that the natural edge between the village and the adjacent agricultural or opens space area is maintained.

Appellants argue that a SEGS at the proposed location would not "extend the existing development" in that area. It is important to note, however, that this portion of the comprehensive plan is merely a recommendation. *See HNS Dev. v. Baltimore County*, 425 Md. 436, 457–58 (2012) (quoting *Mayor & Council of Rockville v. Rylyns*, 372 Md. 514, 530 (2002)) ("As a general rule, comprehensive plans 'which are the result of work done by planning commissions and adopted by ultimate zoning bodies, are advisory in nature and have no force of law absent statutes or local ordinances linking planning and zoning. Where the latter exists, however, they serve to elevate the status of comprehensive plans to the level of true regulatory devices.'").

Washington County Zoning Ordinance provides regulations for SEGS specifically. Section 4.26 of the ordinance, titled Solar Energy Generating Systems, states:

> The purpose of this section is to establish regulations to facilitate the installation and construction of Solar Energy Generating Systems as defined in Section 28A (hereinafter "SEGS") for landowners, subject to reasonable restrictions which will preserve the public health and safety.
>
> SEGS shall be permitted as a land use and specified in Sections 3.3 and 21.32 of this ordinance. However, SEGS shall be prohibited as a use in defined Priority Preservation Areas, Rural Legacy Areas, and Antietam Overlay zones.

The section describes in great detail the design standards to which SEGSs must adhere, including appearance, height, lot size, and lighting requirements. It also provides design standards for SEGSs in airport zones.

Based on the comprehensiveness of §7-207, local zoning regulations and comprehensive plans are impliedly preempted by state law for SEGSs requiring a CPCN.

9

The statute grants the PSC broad authority to determine whether and where the SEGS may be constructed and operated. It is even more evident that the Legislature intended to have the state govern SEGS approval by requiring local government input into the state's final decision.

The Court of Appeals reached the same conclusion in *Howard County v. Potomac Electric Power Co*., 319 Md. 511 (1990). There, the Court considered whether the authority granted to the PSC under Article 78 (now PUA §7-207) preempted local land use and zoning ordinances regulating the location and construction of certain transmission lines. The PSC issued a CPCN authorizing construction of overhead transmission lines designed to carry an excess of 69,000 volts. *Id*. at 514. PEPCO then petitioned the Board of Appeals of both Montgomery County and Howard County, where the lines would run, for special exceptions to their respective zoning requirements to permit the construction. *Id*. at 517. Montgomery County granted the special exception subject to conditions, while Howard County denied it. *Id*. On appeal of both decisions, the Court of Appeals held that CPCN law preempted local land use and zoning requirements, holding that "it is clear that, in the field of public utility service, the General Assembly intended to grant broad powers to the PSC to execute its principal duty of assuring adequate electrical service statewide." *Id*. at 524.

The Court based its decision on the comprehensiveness of PSC laws governing generating stations and transmission lines and the advisory role of local governing bodies. It noted that:

The provisions of Article 78, and in particular §54A, make no reference to local governing bodies; the only language giving recognition to local authorities in the proceedings for granting a certificate of public convenience and necessity is that in §54A which states that the PSC shall make its determination after "due consideration of the recommendations of such governing bodies." Manifestly, this language implies that the recommendations from other state agencies and local governing bodies are advisory only and not controlling.

*Id*. at 525-26. Ultimately, the Court held that "local governing bodies are impliedly preempted from regulating construction of transmission lines carrying in excess of 69,000 volts by broad legislative grant of power to Public Service Commission to regulate construction of overhead transmission lines." *Id*. at 511.

Appellants' attempt to distinguish *Howard County* from the case at bar fails. Appellants argue that the "explicit[] premise[]" and "essence of the decision in *Howard County* is that the need of the community for high-voltage transmission lines was of such public benefit and significance that local zoning should be preempted[,]" and such public interest does not exist for SEGS. We find no language in *Howard County* to support such an assertion. The holding, which is the same conclusion we reach in the case before us, rested on the fact that "Article 78 is substantially more comprehensive and no PSC rule or order requires compliance with local zoning ordinances as a precondition for obtaining a certificate of public convenience and necessity." *Id*. at 525.

Appellants also draw our attention to Fiscal and Policy Note to Senate Bill 887 (2013). In pertinent part, the note reads:

PSC is the lead agency for licensing the siting, construction, and operation of power plants in the State. If a generation station is granted an exemption from the CPCN requirement,

11

> PSC evaluation is limited to ensuring safety and reliability of the electric system. All other issues other than safety and reliability of the electric system are left up to other State and local agencies.

Appellants argue that because a CPCN is required "for some but not all solar photovoltaic system-based generating stations, it cannot be said that the legislative body intended to preempt the entire field." We do not agree. Exempting certain generating stations from the CPCN requirement does not lessen the comprehensiveness of §7-207. Furthermore, Perennial's proposed SEGS is not exempt from the CPCN requirement, and the PSC remains the lead agency for this project. Therefore, following the logic of the Court of Appeals in *Howard County v. Potomac Electric Power Co.,* 319 Md. 511 (1990) and the legislative intent discussed *supra*, we hold that the PSC preempts, by implication, local zoning regulation and thus affirm the circuit court.

## 2. PSC Jurisdiction

Lastly, Appellants argue that Perennial is not governed by PSC law because "[t]he Public Service Commission regulates only solar photovoltaic systems operated by public service companies." This argument is without merit.

Appellants cite to PUA §2-113(a)(1)(i), which states that the PSC shall supervise and regulate public service companies within its jurisdiction. "Public Service Company" is defined as "a Common Carrier Company, Electric Company, Gas Company, Sewage Disposal Company, Telegraph Company, Telephone Company, Water Company, or any combination of public service companies." PUA §1-101(x)(1). It is undisputed that Perennial is not a public service company. The statute does not state, however, that the

12

PSC's jurisdiction is limited to public service companies *only*. In fact, the statute expressly provides that "[t]he powers and duties listed in this title do not limit the scope of the general powers and duties of the Commission provided for by this division." PUA §2-113(b).

PUA §7-207(b)(1)(i) states that "a person may not begin construction in the State of a generating station" until a CPCN permit is obtained. A "person" is defined as an "individual, receiver, trustee, guardian, personal representative, fiduciary, or representative of any kind and any partnership, firm, association, corporation or other entity." PUA §1-101(u). Contrary to Appellants' assertions, the applicable statute here, 7-207(b)(1)(i), is not limited to public services companies. Perennial is "a person" seeking to construct a generating station in Maryland, and, therefore, is required to get a CPCN through the PSC.

Appellants draw our attention to a decision by the PSC for a CPCN application, *In Re: Potomac Edison Co.*, 100 Md. P.S.C. 276, 2009 WL 3517701 (2009), where the PSC found that §7-207(b)(3) authorizes it to issue a CPCN only to an electric company. Appellants misinterpret the decision. The PSC determined that it could not issue a CPCN to a non-electric company because "§7-207(b)(3) . . . limits the Commission's authority to issue CPCNs for transmission lines designed to carry a voltage in excess of 69,000 volts to 'electric compan[ies][.]'" PUA §7-207(b)(3) is a different section of the statute than the one before us now. Unlike with transmission lines, the PSC is not limited to authorizing CPCNs to electric companies under §7-207(b)(1)(i). Instead, any "person" may apply for a CPCN to construct a generating station. Furthermore, PSC's denial of a CPCN application does not diminish PSC jurisdiction. To answer Appellants' question simply: Perennial, in its attempt to construct a SEGS, is subject to PSC regulation.

13

**JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**